**Lloyd KUSAK, Plaintiff–Appellee, Cross–Appellant,**

v.

**AMERITECH INFORMATION SYSTEMS, INC., Defendant–Appellant, Cross–Appellee.**

Nos. 95–1935, 95–1982.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1995.

Decided March 29, 1996.

Rehearing Denied May 13, 1996.

Thomas J. Dillon (argued), Roger J. McFadden, Tyrrel J. Penn, McFadden & Dillon, Chicago, IL, for Lloyd Kusak.

Charles C. Jackson (argued), Ronald J. Kramer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Hubert O. Thompson, Carney & Brothers, Chicago, IL, for Ameri-

tech Information Systems, Inc. in No. 95–1935.

Hubert O. Thompson, Deborah A. Richard, Carney & Brothers, Chicago, IL, for Ameritech Information Systems, Inc. in No. 95–1982.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

When Ameritech Information Systems (AIS) told Lloyd Kusak, an experienced systems engineer, in November of 1990 that his position had been declared "surplus," he was understandably displeased with the news. Kusak eventually brought a complaint under the Age Discrimination in Employment Act ("ADEA") and prevailed at a jury trial, winning both actual damages and liquidated damages for a "willful" violation. Both parties appeal to this court. AIS claims that the district court should have granted its post-trial motion for judgment as a matter of law, or at least its motion for a new trial, while Kusak asserts that his award should have included money for "front pay," in addition to the other items of damages. We conclude that the district court erroneously conflated two distinct theories of ADEA liability—wrongful termination and discriminatory employment practices—and thus allowed this case to go to the jury even though Kusak had not carried his burden of establishing a prima facie case. Because the evidence was insufficient as a matter of law to support a finding of age discrimination in AIS's treatment of Kusak, we reverse.

I.

In October 1988, AIS hired Kusak (then 60 years old) to work as a systems engineer. Approximately two years later, as part of a general corporate restructuring effort, AIS declared that a number of positions were "surplus." Three individuals in Kusak's eleven member group were among those whose jobs disappeared that way: Kusak (age 63), Shari Lawrence (age 32), and Eileen Wallace (age 36). As part of the November 16, 1990 notice giving him the bad news, AIS informed Kusak that it would begin "intensive internal placement activities" for him for a period of 60 days, if he so desired. Kusak immediately requested these services. AIS Manager of Staffing and Affirmative Action Beckie Harris subsequently contacted him and told him that she would assist him in finding alternative employment within both AIS and other Ameritech subsidiaries in the Chicago area. Harris also reminded Kusak that he would also need to review job announcements on his own.

Harris' initial efforts were at least partially successful. One week before Kusak's release deadline, she located a temporary position for him as an assistant to Jerome Chaney. Chaney had been assigned to be the director of strategic alliances for Ameritech's Data Strategy Task Force. Chaney told Kusak that the assistant's position he had been offered was temporary, and that it would last only for the duration of the Task Force. Kusak was the only member of the Task Force whose former position had been declared surplus. In December 1991, true to Chaney's predictions, the Task Force completed its work and Kusak was told that he would be terminated effective December 20, 1991.

Neither Kusak nor AIS had been idle during the period between November 1990 and December 1991, but the extent of AIS's efforts to help Kusak find alternative employment was disputed at the trial. During that period, Harris submitted Kusak's application (known as a PR–36 in Ameritech jargon) for a total of thirteen positions, six before he began working for the Task Force and seven after. Of the seven submitted while he was working for the Task Force, Harris submitted three on her own initiative and four upon Kusak's request.

Kusak emphasizes that during the same time period there were at least 174 positions within AIS that were reflected on 168 of the company's internal "PR–20" forms in Harris' office. Harris did not submit Kusak's PR–36 for a single one of these postings. Kusak testified, without rebuttal, that he was qualified for at least 25 of these positions. The record reflected that nine of the 25 positions for which he was qualified were filled by individuals under the age of 40. Kusak also

presented other examples of positions for which he believed he was qualified, for which company representatives did not submit his PR–36 to the selecting official.

## II.

Kusak did not file a complaint of age discrimination with the Equal Employment Opportunity Commission until May 15, 1992. Thus, as the district court correctly held, he was time-barred from challenging the initial November 1990 decision to declare his job "surplus." See 29 U.S.C. § 626(d)(2); *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir.1990). In addition, Kusak's complaint did not contend that his position on the Task Force was anything but temporary. Before this Court, he argues briefly that the Task Force had not yet completed its work, that Chaney still had some use for him and that his Task Force duties were reassigned to younger individuals. The district court, however, concluded that the evidence tending to show that the elimination of the Task Force position was pretextual was insufficient to support the jury's verdict, and we agree. The court put it succinctly: "[p]laintiff's position, along with others, was eliminated in 1990; the company found him a temporary slot, and then that temporary position came to an end, as temporary positions inevitably do." Thus, the district court correctly held in its Memorandum and Order denying judgment as a matter of law that Kusak's claim could not rest on either the November 1990 or the December 1991 terminations.

■ Time-barred from complaining about the critical November 1990 decision, and without enough evidence to show that the Task Force job was not what it appeared to be, Kusak is left with one argument: that AIS did not live up to its promise to search intensively to find alternative employment for him within the company (or its corporate family), and its lethargy reflected age discrimination. We must therefore consider whether the evidence at trial could support a jury's finding that AIS's operation of its job placement service for employees whose positions were eliminated was conducted in an impermissibly discriminatory manner, or if the ineffective job search program was in

effect a continuation of the November 1990 job action.

■ The job placement service offered by AIS is analytically no different from many other "terms, conditions, or privileges of employment" covered by the ADEA. 29 U.S.C. § 623(a)(1). An employer might offer training programs, promotion opportunities, or disability benefits to its employees, and the ADEA makes it clear that the employer may not condition access to those benefits on the age of the employee. See *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995); *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1392–93 (7th Cir.1990). In this case, AIS chose to make a particular benefit available to employees who were the victims of a reduction in force: an internal placement service that would search for a period of 60 days after the employee's position had been declared "surplus" and that apparently was available thereafter for some employees. The first question is therefore whether the jury could have found age discrimination in AIS's operation of that program.

In order to get to the jury, Kusak had to prove (1) that he was in the protected age group, (2) that he was performing according to his employer's legitimate expectations, (3) he did not get the benefit of the job search program, and (4) younger employees were treated more favorably. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995). It is at the last step of this analysis that the district court slipped in its Memorandum and Order denying judgment as a matter of law. Instead of requiring Kusak to prove that younger employees were treated more favorably for purposes of the job search program, the court stated that "[i]t was not ... plaintiff's burden to prove more favorable treatment for others or to demonstrate the likelihood of getting a specific position. If the company did not carry through for plaintiff he need not prove that they did carry through for others...."

This is not an accurate statement of the law. If it were, then any individual in a protected category, whether it be race, sex, age, or something else, would need to prove only that he or she did not receive a particu-

lar benefit or job offered by an employer, in a vacuum, in order to prevail. Discrimination, however, implies differential treatment based upon an impermissible category. In this case, that category is age. Somehow, in some way, Kusak had to show that his access to or treatment in the job placement program AIS operated was inferior due to his age. There is no evidence of that kind in the record. For all we know, AIS makes only the minimal efforts about which Kusak is complaining (assuming that his characterization is an accurate one) for everyone. If so, there is no age discrimination; there is just a minimalist program. The facts we have suggest that this hypothesis may be accurate. Kusak himself admitted that he knew of no other "surplussed" employee for whom Harris submitted as many PR–36 forms for new jobs, which implies that his treatment was equivalent to that given to others whose jobs were eliminated. In any event, there is no evidence tending to show that younger employees received more solicitous treatment in the placement program, and without that, Kusak has no case related specifically to that program.

■ Recognizing that, Kusak comes finally to his core complaint: AIS's failure to find another job for him was, in effect, a long, drawn-out process of discharging him, which only came to fruition when the Task Force job ended in December 1991. This theory at least overcomes the timeliness problem with his complaint about the November 1990 action, but it too fails in the end.

In essence, Kusak is trying to invoke the well established rule that "evidence of earlier discriminatory conduct by an employer that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer." *Mathewson v. National Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir.1986). The earlier allegedly discriminatory conduct is the November 1990 decision to declare his position "surplus;" the subsequent discriminatory conduct is either the ineffective operation of the job placement service for him or the December 1991 termination of his Task Force job. The question for these purposes is whether, taking the facts as Kusak presents them and as the jury heard them, age discrimination in the November 1990 termination changes the character of either his experience with the job placement service or the elimination of the Task Force job.

The answer, unhappily for Kusak, is once again no. At the risk of being repetitive, without knowing how the job placement service was handled for younger employees, it is impossible to tell whether or not in Kusak's case Harris was sitting on her hands to help carry out a discriminatory plot to eliminate older workers. In other words, we can and do assume for this purpose that the November 1990 decision was impermissibly based on Kusak's age, but that does not help us interpret the company's efforts to find him a new job. It also does not explain why he landed in a temporary job that actually entailed a pay raise for him, or why Harris made any efforts at all for him during 1991. Without the other half of the equation, showing better treatment for younger employees, Kusak does not have a case. Finally, as we noted above, we agree with the district court that there was no evidence that would indicate the December 1991 elimination of the Task Force position was anything but legitimate. There is nothing to link the 1991 completion of the Task Force's work to Ameritech's 1990 decision to declare Kusak's job "surplus," and thus his loss of employment in 1991 cannot be affected by an assumption that the 1990 decision either was or was not discriminatory.

### III.

In light of our disposition of AIS's principal appeal, we need not reach its arguments on the inappropriateness of liquidated damages for willful discrimination, nor is it necessary to address Kusak's cross-appeal regarding his request for front pay. Kusak's complaint here is really about AIS's decision to declare his former job "surplus," but he did not file his charges with the EEOC in time to raise that claim. Kusak's back-up argument is that AIS discriminated against him in providing placement services, but he did not present evidence establishing preferential treatment for younger employees.

AIS is entitled to judgment as a matter of law on Kusak's ADEA claim. The case is therefore REVERSED and REMANDED for entry of judgment accordingly.