In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1003

William Radue,

Plaintiff-Appellant,

v.

Kimberly-Clark Corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98 C 879--Barbara B. Crabb, Judge.

Argued June 1, 2000--Decided July 10, 2000

Before Bauer, Easterbrook, and Manion, Circuit Judges.

Manion, Circuit Judge.  When Kimberly-Clark informed William Radue that he would be laid off from his mechanical engineer position as part of a reduction in force, it also mentioned that he could seek other positions with the company. Radue never secured another job, so he sued under the ADEA, maintaining that younger employees were given positions for which he was qualified. Because Radue failed to show discrimination under the direct method, and was unable to establish a prima facie case of age discrimination, the district court granted summary judgment for Kimberly-Clark. We affirm.

I.

William Radue is a mechanical engineer who worked for Kimberly-Clark between June 30, 1975 and April 1, 1996. Since 1995, Radue was a senior project engineer assigned to a paper machine project at the Whiting Mill in Whiting, Wisconsin. When the project was nearing completion, Kimberly-Clark informed Radue that it had no further projects requiring his mechanical engineering skills and that his position would therefore be eliminated. Radue was fifty-three years old at this time, and was only two years away from eligibility for severance benefits. He asked whether another slot might be found for him so that he could complete the requisite two

years, and he expressed a willingness to take any available position. Kimberly-Clark officials informed him that he should seek other jobs in the company by contacting people he knew and by using the resources of the company's Engineering Career Development Team. The ECDT sought to match engineer employees with suitable positions throughout the company. It did this by maintaining a database of all engineering personnel and vacant engineering positions. Each sector of the company had a representative on the ECDT, and Radue's representative was Jim Parent. Although Parent located a position for an electrical engineer who was subject to the RIF, he was unsuccessful in finding one for Radue. Other engineers transferred to positions throughout the company, but Radue never obtained another job with Kimberly-Clark, either through his informal inquiries or through the ECDT.

Claiming that he was the victim of age discrimination, Radue sued the company under the Age Discrimination in Employment Act, which prohibits intentional discrimination against persons over the age of forty. See 29 U.S.C. sec. 623(a)(1). Radue did not allege that the reduction in force was motivated by his age. Rather, his complaint centered on the company's failure to assist him to the same extent it assisted other employees in finding other vacancies, and the company's failure to transfer him to other positions. The district court granted summary judgment for Kimberly-Clark because Radue could not show discrimination under either the direct or indirect method. He presented no direct evidence of discrimination. With respect to the indirect method, while he presented evidence that one substantially younger employee might have been treated better than he was, and that some similarly situated employees might have received preferential treatment, he failed to show that any employee who was both similarly situated and substantially younger received superior treatment with respect to an intra-company transfer. Radue appeals from the summary judgment, arguing that he has created a genuine issue for trial under either the direct or indirect method.
II.

Radue concedes, as he must, that the ADEA does not require his employer to terminate younger employees in order to open positions for older workers. See Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992). Radue also recognizes that when an employer reduces its workforce it has no duty to transfer senior employees to available positions. Taylor v. Canteen Corp., 69 F.3d 773, 780 (7th Cir. 1995). But when internal job placement services are

benefits of employment which are provided to younger employees, an employer must provide roughly the same benefits to ADEA-protected employees, and when an employer responds to a RIF by transferring employees to available positions, it may not refuse to transfer older employees based on their age. Kusak v. Ameritech Info. Sys., Inc., 80 F.3d 199, 201 (7th Cir. 1996); Taylor, 69 F.3d at 780. We assume, because the parties do, that use of the ECDT system was a benefit that Kimberly-Clark provided to all employees, and that Radue was therefore entitled to receive equal treatment in the internal job search. There's no indication that in communicating to supervisors the names of engineers available for transfer Kimberly-Clark did not treat Radue the same as it did younger employees, which precludes Radue's "job hunting" claim. Furthermore, a claim that an employer refused to provide equal assistance in finding a transfer for a protected employee requires a showing that there was an available position for which the plaintiff was qualified. See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000) (employee must have been qualified for and applied for specific jobs that were available during the RIF); Taylor, 69 F.3d at 779, 780. As will be seen in addressing Radue's failure to transfer claim--which has the same requirement-- he made no such showing. So we confine our analysis to Kimberly-Clark's failure to transfer Radue. To withstand summary judgment on this claim, Radue must present sufficient evidence from which a jury could find that his employer acted with a discriminatory intent in failing to consider him for positions commensurate with his skills. Blackwell v. Cole Taylor Bank, 152 F.3d 666, 672 (7th Cir. 1998). He may do this using either the direct or the indirect method of proof. Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 940 (7th Cir. 1997).

A. The Direct Method

Radue first argues that summary judgment was improper because he has sufficient direct evidence of discriminatory intent to create a genuine issue for trial.

A plaintiff can avert summary judgment for the defendant in an employment discrimination case by presenting enough evidence, whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial. Sheehan, 104 F.3d at 940. In pleading discrimination cases, litigants, usually as an alternative argument, will often contend that they have unearthed direct evidence of discriminatory intent, but such direct evidence--"eyewitness testimony as to the employer's mental processes"--is rarely

found. Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000). Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus. Troupe v. May Dep't Stores, Co., 20 F.3d 734, 736 (7th Cir. 1994); see Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1178 (7th Cir. 1997); Sheehan, 104 F.3d at 941. Radue has nothing that looks even slightly like an admission, which is not surprising, since most employers are careful not to openly discriminate and certainly not to publicly admit it. Therefore most plaintiffs, including Radue, must rely on circumstantial evidence of discriminatory intent.

Radue's circumstantial case under the direct method is primarily composed of statistics which show that older employees were treated less favorably than younger employees in various RIFs conducted by Kimberly-Clark. For example, Radue's numbers show that in November 1995, when Kimberly-Clark was performing a RIF in another sector of the company, the mean age of the 140 engineers and consultants selected to be retained was 37.51, while the mean age of the 16 engineers receiving pink slips was 50.75. This, he concludes without any further analysis, demonstrates that his own plight was caused by invidious discrimination. But these statistics hardly compel this conclusion. For starters, they are based on a completely different part of the company (the family care sector) than that in which Radue worked (the Neenah paper sector). The numbers also include more than just engineers. And Radue's contention with respect to these statistics--that the November 1995 RIF was engendered by age bias--differs from the argument made in his own case: his RIF was not age-based, but transfers awarded afterward were. A more basic problem is that statistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation. Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000) (citing Tagatz v. Marquette Univ., 861 F.2d 1040, 1044 (7th Cir. 1988)). Because the occurrence of adverse employment actions may correlate to older employees for reasons other than intentional discrimination, causation is suggested only when the other variables are shown to be insignificant. Furr v. Seagate Tech., Inc., 82 F.3d 980, 987 (10th Cir. 1996). "Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference" of discrimination. Id. A plaintiff must show "disparate treatment between comparable individuals." Id.

Tagatz succinctly illustrates this principle. In that case, the plaintiff showed that younger university professors received larger annual

raises than older professors. While discrimination was one plausible explanation for the disparity, the court acknowledged that an equally plausible, nondiscriminatory explanation was suggested by the fact that "academics' salaries tend to rise rapidly in the early stages of their career and to reach a plateau when the academic becomes a full professor . . . ." 861 F.2d at 1045. Because the plaintiff failed to explain why his statistical evidence did not equally support this alternative theory, it was not particularly probative of discriminatory intent. Similarly, in Barnes v. Southwest Forest Industries, Incorporated, the employer discharged fourteen security guards in a RIF, thirteen of whom were over the age of forty, and hired eleven younger employees just before the RIF, without giving the older employees a chance to compete for the jobs. 814 F.2d 607, 608, 610 (11th Cir. 1987). The Eleventh Circuit held that these statistics failed to support a prima facie case of "failure to retain or rehire" discrimination where the plaintiff offered no other circumstantial evidence suggesting a discriminatory motive. As in the present case, there were alternative explanations for the numbers, which the plaintiff failed to take into account. "Standing virtually alone, as they are in this case, statistics cannot establish a case of individual disparate treatment." Gilty v. Village of Oak Park, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990). Yet Radue has failed to suggest why obvious, alternative explanations were likely not the actual reasons for the layoffs. See Furr, 82 F.3d at 987 (the plaintiff's statistical evidence is flawed when it fails to take into account nondiscriminatory reasons for disparities). Because Radue has neglected his burden of showing that the statistical evidence strongly suggests that his inability to find another position was a result of intentional discrimination, he has not established a case under the direct method.

B.   The Indirect Method

   Radue also contends that he can show intentional discrimination using the McDonnell Douglas burden-shifting method.

   Plaintiffs utilizing the McDonnell Douglas burden-shifting formula for showing discriminatory intent must first establish a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sheehan, 104 F.3d at 940. To do so in an ADEA-RIF-failure to transfer case, a plaintiff must present evidence that: (1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he was subject to an adverse employment action; and (4)

other similarly situated employees who were substantially younger than him were treated more favorably. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 693 (7th Cir. 2000); Taylor, 69 F.3d at 779. Kimberly-Clark does not dispute the first three elements, so the only question is whether Radue established the last element.

1. Similarly situated.

In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. Spath v. Hayes Wheels Int'l-In., Inc., 211 F.3d 392, 397 (7th Cir. 2000). For example, in disciplinary cases--in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason--a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995). This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). In a failure to transfer case some of these factors--like the severity of the infractions--are not relevant, although the same general comparisons must be made. As to the relevant factors, an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). Without making an exhaustive list, we note that in previous RIF cases plaintiffs were required to show at a minimum that the retained or transferred younger employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought, and that the younger employees obtained the desired positions around the same time as the RIF. Biolchini v. General Elec. Co., 167 F.3d 1151, 1154 (7th Cir. 1999); Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998); Taylor, 69 F.3d at 782; Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1392 (7th Cir. 1990).

Radue bases his prima facie case primarily on comparing himself to three employees: Ray Nankervis, Mark Proctor, and Renatta Williams. First, as to Proctor, Radue contends that

Kimberly-Clark provided him with an electrical engineering position. But Radue can't show a meaningful similarity to Proctor because Proctor is an electrical engineer, while Radue is not. The fact that Proctor was qualified for the position he obtained, while Radue isn't, means that there is insufficient similarity to infer discrimination. See Sauzek, 202 F.3d at 919. As far as Nankervis, Radue doesn't indicate that he was subject to a RIF, which means that Nankervis and Radue were not in materially parallel positions. The same holds true for Williams, who accepted a purchasing agent position, but apparently not as a result of a RIF, and therefore is not a candidate for comparison. Spath, 211 F.3d at 397 (plaintiff must show that the 'comparables' are similarly situated in all relevant respects).

A demonstration of substantial similarity would also require a showing that a common supervisor offered one of these other employees a position for which Radue was qualified, and that this same supervisor also knew about Radue's availability but refused to offer the job to him. Radue hasn't shown a common supervisor, and in fact doesn't even mention who offered Williams and Nankervis their positions. This omission alone probably precludes a showing of similarity because when "'different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.'" Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 910 (8th Cir. 1999) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)); see Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999). Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently. Cf. Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 683 (7th Cir. 1996); Timms v. Frank, 953 F.2d 281, 287 (7th Cir. 1992). These distinctions sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination.

Even if Radue demonstrated some likeness to Nankervis, Proctor, and Williams in these respects, he was substantially dissimilar to them in two material ways: he had previous job performance problems and he communicated to superiors that he hoped he could bide his time with the company for two more years in order to qualify for a good severance package. With respect to his performance, Radue was perceived as having a drinking problem, had episodes of non-attendance, and was thought to procrastinate on projects. Nankervis, Williams, and Proctor

were not previously cited for substantial performance problems and never manifested an intent to make a quick departure, which makes them materially different from Radue. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) (substantial similarity requires a showing that the ostensibly similar employees conducted themselves in a corresponding fashion). Because these distinctions were substantial enough to account for the different treatment Radue claims he received, Radue has failed to show that he was sufficiently similar to either Proctor, Nankervis, or Williams to establish a prima facie case.

Radue also points to about thirteen mechanical engineers and six process engineers who were hired, transferred, or promoted to other positions around the time of the RIF. But that's about all he does with this information, and so his halfhearted attempt to show similarity suffers from the problems we just discussed. The defect underlying Radue's approach stems from the frequency of transfers, promotions, and hirings at Kimberly-Clark, which means that these events are not in themselves indicative of discrimination. As we have already emphasized, a showing of discrimination requires more--much more than simply identifying employees who obtained jobs around the same time that the plaintiff was looking for a position. A valid comparison would have entailed showing that the these employees also encountered a RIF, that they obtained positions for which Radue was qualified, and that the supervisors in charge also knew that Radue was looking for such positions. Without this, there's no basis for inferring that the other employees were similarly situated. The similarly situated requirement is very important, for without it a plaintiff would only have to point to one younger employee who was treated better than he. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1398 (7th Cir. 1997). Such a minimal showing would be meaningless, especially with respect to large corporations like Kimberly-Clark. The record in this case does not indicate that Radue and these nineteen employees shared common features essential to a meaningful comparison, thus they cannot be used to establish the fourth element of a prima facie case of discrimination.

2. Substantially younger.

Finally, we also note that Radue was required to show that any similarly situated employees were substantially younger, which Radue cannot do as to Nankervis and Proctor. Nankervis was forty-six years old at the time of the RIF, which is

problematic for Radue because to satisfy the "substantially younger" requirement, the relevant individual must be at least ten years younger than the plaintiff. Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997). There being only seven years difference between the two, Nankervis is not substantially younger. Proctor won't work either, as he is 9.5 years younger than Radue. But 9.5 is pretty close to 10, and where a plaintiff just misses the 10-year mark, he can still present a triable claim if he directs the court to evidence that his employer considered age to be a significant factor. Fisher, 139 F.3d at 1141. But all Radue has are his statistics, the shortcomings of which we discussed above. Therefore, Radue could not use Proctor to make out a prima facie case either. Although Renatta Williams and the nineteen engineers Radue mentioned are substantially younger than Radue, as we discussed above, Radue didn't show that they were similarly situated.

III.

Radue presented no direct evidence of discrimination and his statistical evidence failed to create a legitimate jury question. As to the indirect method, Radue failed to establish a prima facie case because he could not show that even a single substantially younger, similarly situated employee was treated more favorably. Accordingly, the district court properly granted summary judgment for Kimberly-Clark, and its decision is in all respects

AFFIRMED.