Diane S. BROWN, Plaintiff–Appellant,

v.

SOCIETY FOR THE PRESERVATION AND ENCOURAGEMENT OF BARBER SHOP QUARTET SINGING IN AMERICA, INC., et al., Defendants–Appellees.

No. 00–4324.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2001.

Decided June 25, 2001.

Before MANION, DIANE P. WOOD, WILLIAMS, Circuit Judges.

ORDER

Diane Brown worked briefly for the Society for the Preservation and Encouragement of Barber Shop Quartet Singing in America, Inc., which is headquartered in Kenosha, Wisconsin. Her job came to an abrupt end, however, after an altercation with another employee in the Society's mail room. Believing that this was attrib-

utable to age discrimination, Brown initiated this suit against the Society and four of its employees, raising claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and several state law theories. The district court granted summary judgment for the Society on the ground that Brown failed to establish a *prima facie* case of discrimination; it declined to exercise supplemental jurisdiction over her state claims. We affirm.

## I

At the time she applied for a position as a clerical assistant/relief receptionist with the Society (and at all other times relevant to this case), Brown was 52 years old. Defendant Executive Director Darryl Flinn (age 62) and his assistant Dee Vesevick (age 69) were the two people who interviewed her. Vesevick expressed some concern that Brown, who it seems held a master's degree, was over-qualified for the job. Both Vesevick and Flinn informed Brown at the interview that the job was a sort of jack-of-all-trades position in which she would be expected to help out wherever help was needed. After the interview, they offered Brown the position, and Brown accepted in July 1998.

Initially, things seemed to be going well. At her 90–day performance review on October 5, 1998, Brown's supervisor told her that she was "wonderful" and that the Society hoped she would stay there for a long time. Unbeknownst to Brown, at around the same time Vesevick reported to Flinn that Brown had some attitude problems and complained frequently about trivial matters. Construing the record in the light most favorable to Brown, as we must on summary judgment review, we assume that these problems alone were not enough as of the time of the performance review to influence Flinn's assessment of her work. Events took a dramatic turn for the worse,

however, not long after the October 5 meeting. On October 19, Brown was substituting in the mail room for an absent employee. Defendant Donna Pierce, 36 years old, the Mail and Document Machine Operator, regularly worked in the mail room and had previously instructed Brown on the proper way to sort and open the mail. On the day in question, Pierce came in periodically to observe Brown's work. At one point, Pierce told her that she "was doing it all wrong." Pierce herself then grabbed some of the mail and began sorting it; according to Brown, Pierce was "throwing the mail around and at me." Brown responded defensively. She asserted that she was doing the job properly and that if she wasn't doing it right then maybe she shouldn't be doing it at all. Brown then got up to leave the room, but Pierce grabbed her arm and held on to her for 10 to 15 seconds. Furious, Brown threatened to call the police. Pierce then released her and Brown left the room. She promptly spoke to defendant Frank Santarelli, the Director of Finance and Administration, about the incident, after which she returned to the mail room to complete her work.

Back in the mail room, Brown overheard Pierce in an adjoining room discussing what had just happened with defendant Pete McCarville, who was the supervisor of the mail room. Pierce expressed her frustration at the fact that Brown was still doing the job wrong in spite of Pierce's three separate efforts to instruct her. Brown heard Pierce say "she's too stupid to learn anything." Pierce did not say anything about Brown's age. McCarville then returned to the mail room and said to Brown, "When you are in here I'm your boss too, and you can't learn, Donna [Pierce] has shown you three times, you can't understand anything and you are stupid." Later that afternoon, Santarelli, McCarville, Pierce, and Vesevick met with

Brown to discuss the incident. Brown thought that they were ridiculing her, however, and she decided to walk out of the meeting before it was formally concluded and without permission from any of the supervisors. Flinn also investigated the incident independently. He concluded that "even though the Plaintiff performed tasks assigned at her own desk well, the Plaintiff held other of her assigned duties throughout the Society and coworkers in disdain, . . . she was not working well with others, and . . . she was not going to be a good fit with our Society family." The following day, October 20, 1998, Flinn fired Brown, explaining to her that he took this action because of her inappropriate attitude, behavior, and her failure to fit into the Society "family." By December 1998, the Society had hired a 53–year–old woman to fill the clerical assistant/relief receptionist position Brown had held.

## II

In due course, Brown filed charges with the Equal Employment Opportunity Commission, received a right-to-sue letter, and filed this action. In its order granting summary judgment for the Society, the district court approached the case using the indirect method of proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Within that framework, it found that Brown had not presented evidence from which a fact-finder could conclude that similarly situated younger employees were treated more favorably than she, nor had she raised a genuine issue of fact on the question whether the Society's proffered reasons for terminating her were pretextual. It also rejected Brown's motion for reconsideration, and this appeal followed.

■ Brown's primary argument on appeal is that the district court, by disregarding her sworn affidavit specifically

contradicting many of the facts proffered by the Society, failed to observe the dictates of *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *Lujan* did not hold, however, that any statement in any affidavit was enough to raise a genuine issue of material fact. To the contrary, the Court in no way undercut the importance of compliance with Fed.R.Civ.P. 56(e). Instead, it stated that the object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Here, the district court correctly found that to the extent Brown's affidavit contained conclusory, unsupported denials, it was not sufficient to raise genuine issues of fact for trial. See *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

In the absence of any direct evidence of discrimination, Brown attempted to support her case using the *McDonnell Douglas* process. This required her to show that (1) she was over 40 years old, (2) she was meeting the Society's legitimate expectations, (3) she suffered an adverse employment action, and (4) a substantially younger person was somehow treated more favorably. The district court concluded that Brown could not meet the last of these criteria. Focusing on the fact that Brown was terminated, the court found that the Society had not sought a younger replacement for Brown, but instead had replaced her with a person one year older than Brown. Alternatively, if the real problem was the disparity in the Society's reaction to Pierce's behavior and Brown's behavior in conjunction with the mail room incident, the court found that Brown's case foundered on the fact that Pierce was not similarly situated to Brown. Finally, the court concluded that even if Brown somehow had enough to support a *prima facie* case, she had nonetheless failed to raise a genuine issue of fact on the question

whether the Society's articulated reasons for terminating her were pretextual.

### III

■ We note at the outset that the only way in which these facts might arguably raise an issue of age discrimination relates to the fact that the younger Pierce was apparently not disciplined in connection with the mail room incident, while the older Brown received the most severe sanction possible, termination. We thus disregard the discussion in the briefs about the age of Brown's replacement and the debate between the parties over the question whether the new employee really performed the same job as Brown or not. Discrimination in discipline can certainly raise a valid claim under the ADEA, if the facts show disparate treatment of two similarly situated individuals. *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000). But that is an important "if," and we agree with the district court that Brown did not and could not have shown that Pierce and she were comparable.

Among other salient differences, the district court focused on the following: length of service with the Society, scope of job responsibilities, and prior performance record. Brown had been working there for three and a half months, while Pierce had held her job with the Society for seven and a half years. Pierce's job was exclusively in the mail room, while Brown's principal responsibilities were elsewhere. Decisionmakers at the Society would have had an entirely age-neutral reason for thinking that Pierce's view of the way the mail was to be opened and sorted was the correct one, not Brown's. (And we note that even if Brown had devised a better system, this is immaterial; age discrimination and good management are conceptually different questions.) Finally, Pierce had a long track record of excellent evaluations, whereas from Flinn's viewpoint

Brown's brief tenure was shakier. Even if, as Brown urges, the two women were doing the same job on the day of the altercation, and even if for mail room purposes both had the same supervisor, this is not enough to overcome the significant differences that existed. We thus agree with the district court that Brown did not present enough to support the fourth element of the *prima facie* case, and that summary judgment was appropriate for this reason.

■ We also conclude that if we were to pretermit the *McDonnell Douglas* process and look solely to the question of pretext, once again the district court's decision was correct. The Society articulated the following reasons for terminating Brown: her "inappropriate behavior and attitude during and after the mail room incident as well as [Flinn's] impression of her inability to get along with others, to be a team player and to fit into the Society's family. Mr. Flinn believed it was in the best interest of the Society for him to terminate the Plaintiff's employment." Pretext, of course, means more than bad business judgment; it means that the employer did not honestly believe the reasons it offered for its action. See *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir.2000). Brown has offered absolutely nothing to support the theory that Flinn was lying or trying to conceal a discriminatory motive. She tried to persuade the district court that the reference to "fitting into the Society's family" that Flinn made was a code phrase for age discrimination, but her efforts were unsuccessful. We have no trouble seeing why: there is nothing about family membership that in the slightest way hints at a given age. Families typically have older members, middle-aged members, young adults, and children. This is far from the "code words" the Supreme Court highlighted in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147

L.Ed.2d 105 (2000) (petitioner told he was "so old [he] must have come over on the Mayflower"). See also *Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998) (no liability for statements alluding to "new blood," "a lot of energy," or "quick study"). On this record, we have no need even to consider the so-called common actor presumption under which an inference of discrimination might be weakened if the same person hires and fires the plaintiff within a short period of time. See *Chiaramonte v. Fashion Bed Group,* 129 F.3d 391, 399 (7th Cir.1997). We have noted that this "presumption" in any event is not dispositive in very many cases, see *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 745 (7th Cir. 1999), and its use or non-use certainly makes no difference here.

## IV

None of the other points Brown has raised require discussion, though we have considered everything. The judgment of the district court is AFFIRMED.