Luis D. RODRIGUEZ, Plaintiff–Appellant,

v.

SAINT–GOBAIN CONTAINERS, INC. and Bill Mashburn, Defendants–Appellees.

No. 03–2283.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 2003.

Decided Dec. 17, 2003.

Willie J. Nunnery, Madison, WI, for Plaintiff–Appellant.

Duane R. Denton, Bingham McHale, Indianapolis, IN, for Defendants–Appellees.

Before BAUER, POSNER, and EVANS, Circuit Judges.

## ORDER

Luis Rodriguez, a Mexican–American, sued Saint–Gobain Containers (SGC) and his supervisor, Bill Mashburn, for racial discrimination under 42 U.S.C. § 1981. The district court granted summary judgment for the defendants, concluding that Rodriguez could not make out a prima facie case of racial discrimination and could not rebut SGC's explanation for discharging him as pretextual. On appeal, Rodriguez takes issue with the district court's finding that he did not present any evidence to establish that similarly situated employees were treated more favorably. We affirm.

In 1996 Rodriguez began working for SGC, a glass container manufacturer. While employed at SGC, Rodriguez held nine positions, the last of which was Permanent Floorperson on the swing shift. As a Permanent Floorperson, Rodriguez was assigned to the "hot end"–that part of the production line that involves heating and forming glass containers. The Permanent Floorperson's duties include cleaning the "hot end," cleaning the basement, taking out the garbage, painting the machines that form the glass, and relieving or substituting for the employees who operate the forming machines. Seniority and job responsibilities determine which employee acts as the "back-up" employee for the machine, and the "back-up" employee receives Apprentice hours–hours that are counted towards a promotion to Machine Operator.

Once the employee begins earning Apprentice hours, SGC refers to the employee as an Apprentice Machine Operator. To be qualified to become an actual Machine Operator, one must have a "journeyman card" that can be obtained only by working 4,000 hours on a forming machine. Upon being qualified for the Machine Operator position, an employee becomes eligible for a higher salary.

In May 2001 SGC hired Mashburn as the swing-shift supervisor in the "hot end." Soon thereafter, Mashburn decided to evaluate Apprentice Machine Operators working on his shift. Mashburn evaluated the Apprentices' ability to change the equipment on the forming machine, open the machine, and properly shut down the machine.

Mashburn evaluated Rodriguez and two other employees. Rodriguez received a "Poor" evaluation rating. As a result of the "Poor" rating, Mashburn gave Rodriguez 160 hours to learn how to properly operate the forming machines, after which time Mashburn would re-evaluate him. The parties disagree as to what Mashburn meant when he gave Rodriguez 160 hours–the defendants claim that the hours referred to four 40–hour work weeks, but Rodriguez claims it meant actual time working on the forming machines. Nevertheless, Rodriguez was warned that if he did not pass the second evaluation, he

would be disqualified as an Apprentice Machine Operator.

Mashburn re-evaluated Rodriguez four weeks after the initial evaluation. When Rodriguez did not successfully perform the equipment-changing duties, Mashburn disqualified him from the Apprentice position. The disqualification resulted in Rodriguez losing the 2,470 hours he had already acquired towards becoming a Machine Operator.

After Mashburn disqualified Rodriguez, Rodriguez was reassigned to the "cold end" of the factory, where the final product is packaged and prepared for shipment. Rodriguez asserts that after he moved to the cold end, he lost work hours, including overtime. In July 2002 Rodriguez was fired for violating a company policy–drinking alcohol on SGC's property.

Rodriguez's § 1981 complaint alleged that the defendants discriminated against him on the basis of race when they disqualified him from working on the forming machines, failed to adequately train him to use the machines, and terminated his employment. The district court granted summary judgment for the defendants because Rodriguez failed make out a prima facie case of discrimination (specifically failing to show that he was meeting the legitimate job expectations of his employer, and that other employees were similarly situated). The court went on to note that even if Rodriguez had established a prima facie case, he could not show that the stated reason for his disqualification–that he could not operate the forming machine in a manner sufficient to continue as an Apprentice–was pretextual.

On appeal, Rodriguez asserts generally that the district court ignored evidence that he was treated differently than three other similarly situated non–minorities–specifically Kevin Gast, Scott Kaminski, and Jay Keckhaver–because only he received less training on the forming machines during the four weeks between his two evaluations.

We review the district court's grant of summary judgment *de novo,* viewing the facts in the light most favorable to Rodriguez, the nonmoving party, and drawing all reasonable inferences in his favor. *See Zaccagnini v. Chas. Levy Circulating Co.,* 338 F.3d 672, 674 (7th Cir.2003).

Section 1981 claims–which prohibit racial discrimination within the context of making and enforcing employment contracts–are analyzed under the same framework as Title VII claims of racial discrimination. *See Alexander v. Wis. Dep't of Health & Family,* 263 F.3d 673, 681–82 (7th Cir.2001). To satisfy a prima facie case of race discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was meeting his employer's legitimate performance expectations; and (4) that the employer treated similarly situated employees who are not in the protected class more favorably. *See Gordon v. United Airlines, Inc.,* 246 F.3d 878, 885–86 (7th Cir.2001); *see also McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff can establish a prima facie case, the employer may rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for the challenged action. *See Gordon,* 246 F.3d at 886. The burden then shifts back to the plaintiff to prove that each reason presented by the employer is merely pretext, a lie or completely lacking factual basis. *Id.; Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir.2000).

At the outset, we note that Rodriguez fails to raise any challenge to the district court's finding that he did not present any evidence that he was meeting SGC's legitimate job expectations. The plaintiff must present evidence of each

834

prong of the prima facie case, and Rodriguez's failure to address the district court's finding about legitimate expectations is fatal to his discrimination claim. *See DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 798 (7th Cir.1995).

 Rodriguez does take issue with the district court's conclusion that he could not satisfy a prima facie case because he did not present evidence of any similarly situated employees. To demonstrate that employees are similarly situated, a plaintiff must show that the employees are directly comparable in all material respects. *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002). Rodriguez must show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no "differentiating or mitigating circumstances as would distinguish ... the employer's treatment of them." *See Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000).

Rodriguez identifies three employees–Kaminski, Gast, and Keckhaver–whom he asserts were similarly situated and treated more favorably because they received more training on the machines. Rodriguez asserts that Gast was similarly situated because Gast and he were both evaluated by Mashburn, each received a "Poor" evaluation rating, and both were given 160 hours to learn how to operate the forming machines. But after the initial evaluation, Rodriguez asserts, the defendants allowed Gast to work 224 hours on the forming machines but allowed him only 133 hours. Even if Gast received more training time, however, Rodriguez does not explain how Gast was similarly situated in terms of reporting to the same supervisor, having a similar job description, or engaging in similar conduct. *See Radue,* 219 F.3d at 617–18. Nor has Rodriguez shown how Kaminski or Keckhaver could have been comparable in all material respects. Rodriguez's bald assertion that all four men were similarly situated because they were all Apprentices is insufficient to satisfy his burden under the prima facie test. *Id.*

 Finally, Rodriguez renews his undeveloped assertion that he was subjected to a hostile work environment at SGC. In support of this claim, Rodriguez merely states four facts: that he received written notes saying "Return to Mexico;" that someone placed grease and oil in his toolbox; that he experienced unexplained "locker problems;" and that racially derogatory comments continued. The district court never addressed this particular claim (and understandably so, given its undeveloped state), but it is a non-starter. As objectionable as this treatment was, Rodriguez has not shown that it was so severe as to create an objectively intolerable environment. *See Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir.2003).

AFFIRMED