Gary T. ST. LOUIS, Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 04–1200.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 2004.

Decided Jan. 27, 2005.

David E. Lasker, Lasker & Edwards, Madison, WI, for Plaintiff–Appellant.

Earl H. Munson, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant–Appellee.

Before EASTERBROOK, WOOD, and EVANS, Circuit Judges.

### ORDER

Despite working for American Family Mutual Insurance Company for nearly 30 years, Gary St. Louis was one of the few employees left without a job following a restructuring of the company. He says his experience actually worked against him and suggests a concerted effort by American Family to replace older employees with younger ones. But the district court (Chief Judge Barbara B. Crabb) found that St. Louis did not have sufficient evidence to support his claim of age discrimination. Summary judgment was entered in favor of American Family. St. Louis appeals that judgment.

St. Louis first joined American Family as an underwriter in 1972. Ten years later, he became a corporate training man-ager, a job he held for 10 more years. In late 1991, St. Louis returned to the underwriting staff. He reported to James Schwartz until August 2000, when Joseph Zwettler became his supervisor.

In May 2001, American Family decided to restructure the upper levels of the Personal Lines division where St. Louis worked. The new structure had three tiers of jobs: tier I for director positions; tier II for management and consultant positions; and tier III for specialist and analyst positions.

St. Louis, then 54 years old, applied for four tier II positions, which paid close to the $83,300 he earned annually as a senior underwriting specialist: Product Design Manager, Product Design Consultant, System Design Consultant, and Profit and Growth Consultant. He was not interviewed for any of the positions. Zwettler told St. Louis he was not selected for an interview because of "a gut feeling." (Jack Salzwedel, Zwettler's boss, said it was because Zwettler had concerns about St. Louis's job performance). Zwettler encouraged St. Louis to apply for tier III jobs, though those jobs would leave St. Louis with a pay cut of about $20,000. Instead, St. Louis applied for and accepted a job with another insurance company.

As per usual, we review a grant of summary judgment *de novo*, viewing the facts and drawing all reasonable inferences from them in favor of St. Louis. *See Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir.2002). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

St. Louis first argues that the district court violated his Fifth Amendment right

to due process and his Seventh Amendment right to a jury trial by failing to apply the proper standard for summary judgment. We rejected an almost identical argument in *Koski,* and the argument fares no better here. As we said in *Koski,* summary judgment "has a proper role to play in civil cases," and an argument that the granting of summary judgment violates a party's right to a jury trial "flies in the face of firmly established law." 307 F.3d at 676. Moreover, St. Louis gains nothing by making his argument a constitutional one. Because our review is *de novo,* if summary judgment was appropriate, then we will affirm, meaning that St. Louis's rights were not violated. On the other hand, if the district court should not have granted summary judgment, we reverse, thus protecting St. Louis's right to a jury trial. So the question—whether summary judgment is appropriate—is the same whether or not it is framed as a constitutional one.

Therefore, we move to the question of whether a reasonable jury could find that American Family violated the law against age discrimination by failing to grant St. Louis an interview for any of the tier II positions. St. Louis offers circumstantial evidence, which can provide a basis for drawing an inference of discrimination. *See Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994).

St. Louis looks at the applicant pools for each of the tier II positions he wanted in arguing that American Family's refusal to grant him an interview was part of a concerted effort to drive out its older workers. For example, he notes, one-third to one-half of those interviewing for the Product Design Consultant, System Design Consultant, and Profit and Growth Consultant positions were 10 or more years younger than he. We have found 10 years to be a "substantial" difference in age. *See Hart-*

*ley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 893 (7th Cir.1997). In addition, the proportion of nonclerical employees over 50 in the Personal Lines division fell substantially toward the end of St. Louis's time with American Family.

In its remarkably thorough opinion, however, the district court meticulously examined the statistical evidence and found it to be unconvincing. We agree. As we have noted before, the mere fact of a statistical correlation does not imply causation and, without accounting for nondiscriminatory explanations, does not permit an inference of discrimination. *See Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 616–18 (7th Cir.2000). And here, St. Louis does not account for nondiscriminatory explanations, most notably the rather innocuous possibility that the people in charge of hiring simply believed that the younger applicants were better suited than he was to fill the positions. Zwettler, who worked closely with St. Louis and was the hiring director for the Product Design Manager position, wrote in his April 2001 review of St. Louis that the employee needed "to take more time to listen to others" and to "raise his awareness of the need and value of input from others." Similarly, Maryelyn Geisler, hiring director for the System Design Consultant position, had previously worked with St. Louis and said she did not think he had the communication and leadership skills necessary for the tier II job. Steve Thedinga, hiring director for the Profit and Growth Consultant positions, also knew St. Louis. That leaves American Family with a pretty compelling nondiscriminatory explanation—that those who had worked with St. Louis simply did not think he would be a good fit for the tier II positions he wanted.

In fact, instead of proving animus, the breakdown of interviewees by age actually supports American Family's nondiscrimi-

natory explanation. At least half of those offered interviews for each of the four tier II positions St. Louis sought were not more than 10 years younger than St. Louis. Perhaps more significantly, two of those selected for the Product Design Consultant and two of those interviewed for the System Design Consultant positions were older than St. Louis. And of the four people interviewed for the Product Design Manager position (out of nine applicants), only one was 10 or more years younger than St. Louis, and one was older than St. Louis. Added up, those numbers show that American Family was willing to consider and even hire older workers for tier II positions, suggesting again that St. Louis's applications were rejected not because of his age, but because those who had worked with him did not think he was well-suited for the positions.

The rest of the evidence St. Louis highlights is also consistent with American Family's argument. St. Louis points to the fact that Zwettler completed a performance assessment of St. Louis in April 2001, 7 weeks ahead of the usual 12 months between such reviews. St. Louis suggests that Zwettler wanted to complete the assessment, which included some negative statements, before the reorganization in order to justify American Family's decision not to retain him. But, again, Zwettler's problems with St. Louis seemed to be with his performance and not his age. Two of Zwettler's employees who were given early assessments were hired, and one of those was older than St. Louis.

St. Louis also notes that he would have been given less responsibility on a project to rewrite a key boat policy if his supervisors did not think he was a capable employee, and that Schwartz would not have recommended him to his subsequent employer if he had not done a good job at American Family. But American Family never contended that St. Louis was a bad employee, only that his weaknesses—poor communication and leadership skills—made him a bad fit for tier II after the upper-level job restructuring. In fact, Zwettler encouraged St. Louis to apply for a tier III job, showing that he thought St. Louis could be an asset to the company if placed in the right position. The fact that Schwartz helped St. Louis's application to another insurance company is also consistent with American Family's claim that it thought St. Louis was a good analyst whose skills were not well-suited for the management and consultant jobs he wanted.

So, to sum it up, St. Louis offers little evidence to support his claim that his age played a role in American Family's decision not to interview him, and the evidence he does provide is perfectly consistent with American Family's claim that the decision was based on St. Louis's job performance and skills. The judgment of the district court is AFFIRMED.