NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 26, 2013[*]
Decided June 26, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3499

| | |
|---|---|
| OSCAR TAYLOR, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| v. | |
| | No. 1:10-cv-01611-TWP-DML |
| ELI LILLY & COMPANY, | |
| *Defendant-Appellee.* | Tanya Walton Pratt, |
| | *Judge.* |

**O R D E R**

Oscar Taylor, an African American, has sued his former employer Eli Lilly & Company ("Lilly"), alleging that it denied him two merit pay increases and pressured him to transfer to an inferior position in the company because of his race. The district court granted summary judgment for Lilly, ruling that Taylor had not identified any similarly

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

situated coworkers for his disparate-pay claims and that his transfer to a new position did not constitute a materially adverse employment action. We affirm the judgment.

Because we are reviewing a grant of summary judgment against Taylor, we view the record in his favor. *See Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1001 (7th Cir. 2013). Taylor joined Lilly in 2001 as a sales representative. He specialized in marketing pharmaceutical drugs to psychiatrists in prison facilities, particularly in Texas. Two of Lilly's most important drugs—Zyprexa and Cymbalta—treat schizophrenia and depression, making prisons a target market for Lilly. To better direct its products to prison markets, in late 2004 Lilly created within its new "Business to Business" or "B2B" sales group, a sub-group called the B2B Corrections group.

Taylor and three others joined the newly formed B2B Corrections group as "account managers" charged with enlarging Lilly's prison accounts throughout the country. Not only did Taylor receive a substantial salary boost when he joined the group—from $62,760 in 2004 to $96,820 in 2005—but he also took over accounts covering an eight-state region. Beyond maximizing sales, Taylor's chief responsibility as an account manager was to increase Lilly's "access" to the correctional facilities of his region by convincing corrections officials to put Lilly's drugs in their inventories of approved pharmaceutical products and thereby make it easy for prison physicians to prescribe them to patients. That job, however, lasted only until July of 2006, when Taylor transferred back to a sales position. Lilly disbanded the B2B Corrections group that same year. Taylor's problems at Lilly, and the events that triggered this suit, occurred during his year-and-a-half stint in the B2B Corrections group.

Taylor's first problem concerned raises. His performance evaluation for 2005, completed by his manager Mark Russom, noted that Taylor's "[o]verall Sales and Access performance was significantly below expectations and below peer group at 89% to quota." Also, the evaluation identified success in only four out of seven "leadership behaviors," the remaining three "need[ing] improvement." Consequently, although Taylor was eligible for a merit pay increase based on his 2005 performance, he did not receive one.

The second problem was his transfer out of B2B. Before B2B disbanded, Russom urged Taylor to transfer to a position that focused more exclusively on sales, where the manager perceived that Taylor's true strengths lay. He issued Taylor a formal warning in 2006 cataloguing Taylor's "overall lack of account progress in achieving your access and sales targets in your key validated accounts from Jan 05 to June 2006." He also admonished that "you are behind your peers and significantly below expectations with regards [sic] to your development in strategic account planning." Although initially reluctant to transfer, Taylor eventually took a position as a senior sales representative in the diabetes health

group, where he had a different manager for the second half of 2006 and focused on sales and clients rather than managing accounts.

Although his salary and "pay grade" (Lilly's term for a salary range) remained the same in his new position, he moved to a lower "pay scale group" (a group of salary ranges). While in B2B, Taylor and his colleagues were in "pay scale group 4," the highest group in the sales division, with the greatest potential for raises. When the B2B group disbanded, one of his colleagues stayed in group 4, while the other two moved to sales positions in group 2. Taylor's new sales position was in group 1. Taylor's salary in group 1 was now near the top of his pay grade. This proximity to his salary cap constrained future raises because, as Lilly explained, "only exemplary or very high performance ratings would have triggered a significant increase under the merit pay system." His performance evaluation at the end of 2006—compiled with input from both Russom and his new manager—described his "overall performance to quota" as "below expectations driven by our key function—the access metric." Taylor again did not get a raise.

His three non-black colleagues in B2B—Dana Roberts, Brenda Vickery, and Vince Visingardi—each received pay increases for their performances in 2005 and 2006. Vickery and Visingardi (Taylor ignores Roberts) scored above 95% relative to the quota for their overall access and sales (compared to Taylor's 89%), and they succeeded in five or more leadership categories (compared to Taylor's four). Also, Vickery's raise in 2005 brought her salary up to Taylor's level, but not beyond. Vickery received another raise in 2006, but she and Taylor shared a manager for only the first three months of the year and after that worked in different positions with different responsibilities and supervisors. Taylor left the company in 2007.

Taylor sued under 42 U.S.C. § 1981, alleging race discrimination in the two denied pay raises and the "demotion" from his account-manager position. The court ruled that Taylor failed to make a prima facie case for discrimination on the basis of disparate pay because Vickery and Visingardi were not comparable, and it therefore granted summary judgment on those claims. The court also held that Taylor's transfer to a position as a senior sales representative was not an adverse employment action because his salary remained unchanged and any impact on his potential future compensation was only "minor." The court thus granted summary judgment on that claim as well.

On appeal Taylor first argues that his performance evaluations were similar enough to those of Vickery and Visingardi that the district court should have considered them to be similarly situated. But we agree with the district court that Taylor's evidence for 2005 did not show that he and his two pay-raise comparators were similar in all material respects. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (explaining that analysis

of comparators is designed to eliminate any possible explanatory variables for differing treatment other than illegal discrimination); *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Specifically, Taylor's performance evaluation from 2005 was noticeably different from Vickery's and Visingardi's ratings—Taylor lagged behind his peers both in overall access and sales performance relative to quota (he was below 90% and they were above 95%) and in leadership behaviors (he succeeded in only four categories, they in five or more). Although Taylor views these differences as trivial, he does not dispute that Lilly has a limited budget for pay increases and that not every employee who is deemed eligible for a raise in a given year will get one. Finally, Vickery's pay raise based on 2005 performance merely brought her salary up to Taylor's level, even though she scored better than Taylor on all metrics. The record therefore does not support Taylor's assertion that in 2005 he was treated less favorably than his two comparators on account of his race.

For 2006, the differences are even starker. Vickery is the only proposed comparator that Taylor identifies, but she and Taylor shared a supervisor for only the first three months of the year, making a valid comparison difficult. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) ("[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.") (internal quotation marks omitted). Beyond that, Vickery was on leave from May through December and received only positive comments for her performance during the first half of the year, including a "successful" rating in all seven "leadership behavior" categories. And Vickery never received a warning from Russom for poor performance, as Taylor did. Together these differences make Vickery an inappropriate comparator. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) ("An employee is similarly situated to a plaintiff if the two employees dealt with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") Thus the district court correctly ruled that Taylor could not establish a prima facie case on the basis of disparate pay.

Taylor next challenges the district court's conclusion that his transfer out of B2B did not constitute an adverse employment action. He argues that, compared to his former account-manager position, his new job was less prestigious, offered fewer responsibilities, and made it more difficult for him to get a raise because he was in pay scale group 1. The district court reasoned that the new raise restriction had only a "minor" effect on his potential future compensation and that his job responsibilities did not change significantly, but its reasoning is too narrow. True, a lateral transfer that does not affect pay or significantly affect working conditions is not an adverse employment action, *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661–62 (7th Cir. 2005); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996), and Taylor's salary remained the same. But neither party disputes that his new job involved fewer responsibilities, focusing on sales and clients

without the regional account management of his B2B job. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (categorizing employment actions as adverse where "a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experience, so that the skills are likely to atrophy and his career is likely to be stunted"). Furthermore, Taylor's drop from pay scale group 4 to group 1 made him less likely to receive discretionary merit-based pay raises because his relatively high salary required that he demonstrate "very high performance" in order to be considered for any substantial raise. This new restriction on pay raises was an adverse change. *See Chaudhry v. Nucor Steel–Ind.*, 546 F.3d 832, 838 (7th Cir. 2008); *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007).

We nevertheless conclude that Taylor failed to make a prima facie case of discrimination because he cannot identify a similarly situated employee who received more favorable treatment. Beyond the evidence that Taylor's performance was worse than Vickery's and Visingardi's (his proposed comparators), the record also shows that their transfers were comparable in all material respects to Taylor's. Vickery and Visingardi transferred into positions at pay scale group 2. Taylor believes this fact materially distinguishes their treatment from his, but it does not. All three remained at the same pay grade after their transfers out of B2B, and groups 1 and 2 imposed the same salary cap on that pay grade. This means all three faced comparable restrictions on future raises. And like Taylor, Vickery and Visingardi shed many of their former responsibilities to focus more exclusively on sales in their new positions. Finally, Taylor submitted no evidence suggesting that Vickery's and Visingardi's new jobs were substantially superior to his in terms of rank, prestige, or opportunities for advancement. Accordingly, his two comparators did not receive better treatment.

Taylor responds with two arguments, neither of which supports an inference of discrimination. First, he contends that Russom was unwilling to support his move to a job at pay scale group 2. But Taylor's deposition testimony refutes that charge. He testified that Russom had asked him "to go back to level one or two." "[I]nstead of posting for these level ones and twos," he asked Russom to support his move into a level-three job, but Russom declined. Therefore, in supporting a transfer to a position in group 2, Russom did not treat Vickery and Visingardi differently than Taylor. Second, Taylor observes that years after he transferred out of B2B Russom remarked to colleagues, about a position unrelated to Taylor's, that "I was able to fill it with a white man" and that "[i]t is a difficult time for a white man due to the hurdles the company gives." Taylor construes the comment as an anti-black sentiment. But this isolated comment is too ambiguous and disconnected from Taylor's transfer to support an inference of discrimination. *See Overly v. KeyBank Nat'l*

*Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011); *Davis v. Time Warner Cable of Se. Wis., LP*, 651 F.3d 664, 672 (7th Cir. 2011). Thus we conclude that summary judgment was proper.

**AFFIRMED**.