In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1678

DANA HOFFMAN-DOMBROWSKI,

Plaintiff-Appellant,

v.

ARLINGTON INTERNATIONAL RACECOURSE, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1525--James H. Alesia, Judge.

Argued January 8, 2001--Decided June 19, 2001

   Before Posner, Manion, and Kanne, Circuit
Judges.

   Kanne, Circuit Judge. After being passed
over for a promotion and transferred to
another facility, plaintiff-appellant,
Dana Hoffman-Dombrowski (Dombrowski)
filed suit in federal court alleging that
her employer, Arlington International
Racecourse, Inc., engaged in unlawful sex
discrimin-ation and retaliation in
violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. sec. 2000e,
et seq. Arlington moved for summary
judgment, and the district court granted
the motion. The district court found that
the plaintiff failed to show all of the
elements necessary to make out a prima
facie case on either claim. We agree with
the district court's conclusion;
therefore, we affirm.

I.  History

   Arlington operates Arlington
International Racecourse, a horse racing
facility located in Arlington Heights,
Illinois. In addition to the live meet,
Arlington also owns and operates several
inter-track wagering ("ITW") and off-
track betting ("OTB") facilities where
customers can place wagers on races run
at Arlington and other racetracks. The
largest of these facilities, Trackside,
is an ITW located next door to the live

meet in Arlington Heights.

Dombrowski began working part-time for Arlington in 1980 while she was still in high school. In 1982, Dombrowski accepted a full time position at Trackside working information windows. Between 1983 and 1995, she held various positions at Arlington's live meet and at Trackside including assistant money room head, floor supervisor, assistant mutuel/1 manager, auditor, and head trainer. In 1995, Dombrowski was named Trackside's building manager. As building manager, Dombrowski was given full authority to hire, fire, and discipline the managers in the mutuel department as well as the mutuel clerks. She was also given responsibility over the money room. According to Dombrowski, she accepted this transfer, which included a $17,000 pay cut, in exchange for a promise that she would be named the general manager of that facility at some unspecified time in the future. In early 1996, the acting general manager of Trackside, Ed Jamison, asked plaintiff to apply for a vacantgeneral manager position at one of Arlington's OTB facilities, Waukegan OTB. Plaintiff declined to apply, stating that she would wait for a promotion at Trackside. In June of 1996, Dombrowski became one of three assistant managers at Trackside.

That same month, Scott Lager was hired for the position that Dombrowski claims she was promised--general manager of Trackside. Dombrowski was angered by this, and felt that she had been passed over for the position because of her sex. She spoke with Arlington's human resources manager, Linda Kica, as well as Arlington's Vice-President of Off-Track Operations, Jim Stumpf, to express her concern that she was being treated unfavorably because of her sex. During Dombrowski's conversation with Stumpf, he allegedly told her that she would never be promoted because Mr. Duchossois (the owner of Arlington) does not promote women. Kica reportedly advised Dombrowski to think twice about complaining to upper management because that would be a "career decision." Ignoring Kica's advice, Dombrowski proceeded to meet with Arlington CEO Scott Mordell. In the course of the meeting, Mordell allegedly promised Dombrowski that if she agreed to train Lager, who did not have prior

experience in mutuel wagering, she would be named assistant general manager of Trackside. At the time of this conversation, Arlington did not employ an assistant general manager at Trackside--it was the only off-track facility without an employee in this position.

Dombrowski proceeded to train Lager in all facets of his position, but she was not named to the position of assistant general manager of Trackside. Instead, she claims, she was forced to endure numerous instances of unfair and discriminatory treatment. Dombrowski claims that Lager purposefully changed her schedule so that it would be impossible for her to drop her children off at daycare and still make it to work on time. She also claims that Lager called her a "vindictive manager" and encouraged her to meet Stumpf for drinks if she wanted her career to change. Dombrowski also states that Stumpf made it a practice of having drinks at Trackside and on numerous occasions insinuated that her ability to advance at Arlington was dependent on whether or not she began a romantic relationship with him.

Dombrowski also contends that Arlington targeted her by secretly videotaping the manager's office. On September 5, 1997, a written warning was issued to Dombrowski after she was caught on video allowing unauthorized persons into the office area at Trackside. This warning came six months after Lager circulated a memorandum to all managers informing them that only Arlington employees were allowed in the office areas. Dombrowski admits that she violated the policy, but she claims that she should not have been disciplined because the practice of allowing "VIP" customers into the office area was tacitly approved by management.

Shortly thereafter, Arlington announced its intention not to participate in the 1998 live racing season and to indefinitely close Arlington International Racecourse. Accordingly, Arlington reduced its workforce from 400 to 250 employees and transferred several managers from the live meet to Trackside. Two Trackside managers, including Dombrowski, were transferred to other OTB facilities. Dombrowski learned of her transfer on October 15, 1997 during a

meeting with Kica, Lager, and Stumpf. During that meeting, Dombrowski was presented with a memo informing her that she was to be transferred to Waukegan OTB as an assistant manager. Angered and surprised by this news, Dombrowski told Lager that he was incompetent and that he would be nothing without her. Lager responded by telling Dombrowski that she had already been replaced and that her career at Trackside was over. He also told her that if she didn't like being transferred that she should just quit. On the same day that plaintiff was instructed to report to Waukegan OTB, Arlington named Dan Majchrzak, the former assistant manager of mutuels at the live meet, to the newly created position of assistant general manager at Trackside. According to Arlington, the creation of this position was necessitated by the reconfiguration of the business that resulted from the live meet closure.

Dombrowski's transfer to Waukegan did not affect her title or compensation. In fact, she earns more than both Waukegan's general manager and assistant generalmanager, and is the highest paid assistant manager at Arlington. Nonetheless, Dombrowski feels that the transfer to Waukegan OTB is a step down because her responsibilities have been greatly reduced and Waukegan is a "small, dirty, roach infested facility so crime ridden that guards and police officers must escort her to her car in the evening." Dombrowski claims that defendants hoped that she would quit rather than accept the transfer to the Waukegan facility.

Dombrowski is now one of four assistant managers at Waukegan OTB. The parties vigorously dispute whether Dombrowski's responsibilities decreased as a result of her transfer, but she claims that she went from preparing the mutuel budget and payroll and staffing hundreds of clerks to scheduling one part time and four full time clerks. Now, she claims, her biggest responsibility is emptying lottery machines three times a week. On November 12, 1997, Dombrowski again met with Mordell to express her feeling that she was transferred because of her sex. Mordell denied this and told her that the transfer would be good for her career at Arlington because working at a different facility would allow her to see the big

picture of Arlington's operation. Dombrowski claims that shortly after this meeting, her father and sister, both Arlington employees, were subjected to adverse employment actions.

In March 1998, plaintiff filed suit in federal court alleging that she was the victim of sex discrimination as well as retaliation for reporting sex discrimination. Arlington moved to dismiss certain portions of plaintiff's complaint as time-barred. The district court granted the motion and issued an order specifically limiting plaintiff's claims to conduct occurring after February 6, 1997./2 On February 14, 2000, the district court granted summary judgment for Arlington on Dombrowski's discrimination and retaliation claims. The district court found that Dombrowski failed to make out a prima facie case on either claim, and that even if she had been able to, that Arlington had articulated a non-pretextual business reason for its actions.

## II.  Analysis

### A.  Standard of Review

We review de novo the district court's decision to grant summary judgment for Arlington, viewing the evidence and drawing all inferences in favor of the nonmoving party. See Oest v. Ill. Dept. of Corr., 240 F.3d 605, 610 (7th Cir. 2001). Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A disputed fact is only material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B.  Sex Discrimination

As we know, of course, Title VII makes it unlawful to discriminate against an employee because of her sex. See 42 U.S.C. sec. 2000e-2(a)(1). Dombrowski advances two claims of sex

discrimination. She argues that Arlington violated Title VII both by failing to promote her to assistant general manager of Trackside/3 and also by transferring her to Waukegan OTB. An employee alleging sex discrimination may prove her claim either directly or indirectly. See Oest, 240 F.3d at 611 (7th Cir. 2001). Dombrowski has not presented evidence of discrimination using the direct method for either of the challenged actions, therefore she must proceed using the burden-shifting method articulated in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d. 668 (1973). See O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001). To show discrimination indirectly, Dombrowski must first make out a prima facie case by showing the following: (1) she is a member of a protected class; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably. See Russell v. Bd. of Trs. of the Univ. of Ill., 243 F.3d 336, 341 (7th Cir. 2001). Once she has done so, the burden shifts to the defendant to put forth a legitimate, non-discriminatory business reason for the challenged action. See id. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the articulated reason is pretextual. See id.

Arlington does not dispute that Dombrowski has properly shown the first two elements of her prima facie case with respect to both of the actions she challenges here. Nor does Arlington dispute that Dombrowski has met the third requirement--that she was subjected to an adverse employment action--with respect to the denial of promotion claim. Arlington maintains, however, that Dombrowski's transfer to Waukegan OTB was not adverse because it was a lateral move that did not affect her salary, benefits, or job title.

Arlington is correct that "not everything that makes an employee unhappy" will suffice to meet the adverse action requirement. Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Our cases provide, however, that anostensibly lateral transfer may be an

adverse employment action in some situations if it is accompanied by a "dramatic downward shift in skill level required to perform job responsibilities." Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994); see also Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1112 n.7 (7th Cir. 1998). Dombrowski claims that her job responsibilities were indeed severely diminished. The district court found that Dombrowski had put forth sufficient evidence to create a genuine issue of material fact as to whether or not her transfer constituted an adverse employment action. We agree. Viewing the evidence in the light most favorable to Dombrowski, as we must, we find that a rational jury could find that her responsibilities were diminished to such an extent that she suffered an adverse employment action. Therefore, we agree with the district court that, for the purposes of summary judgment, Dombrowski has met the third requirement of her prima facie case for the discriminatory transfer claim.

Dombrowski has not, however, met the fourth element of her prima facie case for either of the challenged actions because she has not named a similarly situated male that was treated more favorably. Dombrowski does not even attempt to identify any similarly situated male with regard to her transfer claim. With respect to the denial of promotion claim, Dombrowski argues that Dan Majchrzak, the individual appointed to be assistant general manager of Trackside, is a similarly situated male who was treated more favorably. Although Majchrzak did receive the position that Dombrowski wanted, he was not similarly situated to Dombrowski at the time of his promotion. Dombrowski and Majchrzak were not similarly situated because they did not hold the same or equivalent positions at the time that Arlington decided to promote Majchrzak to the position of assistant general manager at Trackside. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) (explaining that an employee must show substantial similarity in order to meet the similarly situated requirement). At that point, Dombrowski was an assistant manager at Trackside while Majchrzak was employed as the assistant director of mutuels. Arlington submits that Majchrzak's move

from his previous position to assistant general manager of Trackside was a lateral move, while it would have unquestionably been a promotion for Dombrowski. Dombrowski has not come forward with any evidence to rebut this contention. Instead, she argues that she was entitled to the promotion because she had more seniority than Majchrzak and Arlington's personnel policy provides that seniority will be the determining factor between two roughly equivalent candidates. This argument fails, however, because the personnel policy only comes into play if the candidates are equivalent, and as we have just stated, Majchrzak held a higher level position than Dombrowski.

Instead of naming a similarly situated male, Dombrowski attempts to satisfy the fourth requirement of the prima facie case by pointing out that from September to November 1997, there were approximately equal numbers of male and female assistant managers, but a disproportionately greater number of male assistant general managers and general managers. Although evidence of a glass ceiling might be appropriate circumstantial evidence of discrimination under the direct-proof method, it does not satisfy the similarly situated prong. Moreover, such an argument would require more than a bare recitation of the numbers of males and females in various positions. See Radue, 219 F.3d at 616-17 (stating that "[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of discrimination"). Dombrowski has not shown that she was treated less favorably than any similarly situated male employee.

Even assuming, arguendo, that Dombrowski had met all of the requirements of the prima facie case, Arlington has presented a legitimate, non-discriminatory reason for transferring her to Waukegan OTB and for declining to promote her to the position of assistant general manager at Trackside. According to Arlington, the actions of which Dombrowski complains are a result of the reorganization that occurred once the decision was made to suspend live racing indefinitely. It is undisputed that following this decision, Arlington was forced to reduce its workforce from 400 to 250 employees.

Arlington also contends that the need to create the assistant general manager position at Trackside did not arise until the closure of the live meet. At that point, Arlington claims that additional supervisors were needed at Trackside because the OTBs and ITWs were to become the mainstay of Arlington's business. Arlington also states that its decision to name Majchrzak to that position was a result of its desire to retain a core group of management employees in the event that live racing was resumed in the future. Majchrzak was one of about five managers who were transferred from the live meet to Trackside. Arlington also maintains that plaintiff and the other Trackside assistant manager were transferred to other locations to make room for the incoming managers at Trackside and to provide new energy and leadership to other facilities. Arlington has presented a legitimate, non-discriminatory reason for the challenged actions, thus the burden shifts back to Dombrowski to show that the articulated reason is pretextual.

To show pretext, Dombrowski must demonstrate that Arlington's explanation for either the denial of promotion or the transfer (1) has no basis in fact, (2) was not the real reason, or (3) was insufficient to motivate the action. See Velasco v. Ill. Dep't of Human Servs., 246 F.3d 1010, 1017 (7th Cir. 2001). Dombrowski first argues that Arlington's explanation is pretextual because of the comments that Lager made to her after she was informed of her transfer. She cites Lager's statement that her career was over and that she had already been replaced as evidence that she was not really being transferred to share her expertise with the employees at Waukegan OTB. We find it doubtful that these comments, made in response to Dombrowski's personal attacks on Lager's ability to run Trackside, would be sufficient to convince a factfinder that Arlington's cited reason for the transfer is not the real reason. We need not decide if plaintiff has presented enough evidence to raise a genuine issue of material fact on this issue, however, because Dombrowski has not presented any evidence suggesting pretext with respect to Arlington's claim that the indefinite closure of the live meet necessitated transferring her to a different facility.

See Debs v. N.E. Ill. Univ., 153 F.3d 390, 395 (7th Cir. 1998) ("Where defendants have proffered more than one reason for the dismissal, plaintiff must address all the reasons suggested by the defendants."). Dombrowski argues that reorganization was unnecessary because the live meet closed for several months every year. As the district court observed, however, there is a notable difference between having a few off-season months per year and having no live racing at all. Dombrowski has not provided any evidence tending to show that the reorganization was not Arlington's real reason for deciding to promote Majchrzak to the position of assistant general manager and transferring Dombrowski to the Waukegan facility. Therefore, we find that the district court appropriately granted summary judgment for Arlington on Dombrowski's sex discrimination claims.

## C. Retaliation

In addition to her disparate treatment claims, Dombrowski also alleges that she was denied the promotion to assistant general manager and transferred to the Waukegan facility because of her June 1996 meetings with Mordell, Kica, and Stumpf in which she complained of sex discrimination./4 Under Title VII, employers are prohibited from discriminating "against any . . . employee . . . because [s]he . . . has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. sec. 2000e-3(a). In order to prove a claim of retaliation, a plaintiff must either present direct evidence of retaliation or utilize a burden-shifting approach. See Fyfe v. City of Fort Wayne, 241 F.3d 597, 601 (7th Cir. 2001). If the plaintiff does not have sufficient evidence to employ the direct-proof method, she may make out a prima facie case by showing that: (1) she engaged in protected expression; (2) she suffered an adverse job action; and (3) there is a causal link between the protected expression and the adverse job action. See Krause v. City of LaCrosse, 246 F.3d 995, 1000 (7th Cir. 2001). But see Bourbon v. Kmart Corp., 223 F.3d 469, 477 (7th Cir. 2000) (Posner, J., concurring) (suggesting that requiring proof of a causal connection in retaliation cases is inconsistent with a McDonnell Douglas-

type burden-shifting analysis). As in the context of a disparate treatment claim, fulfillment of the prima facie case shifts the burden to the defendant to articulate a non-retaliatory action for the challenged action. If the defendant does provide a legitimate explanation, the burden shifts back to the plaintiff to show evidence that the proffered reason is pretextual. See Russell v. Bd. of Trs. of the Univ. of Ill., 243 F.3d 336, 344 (7th Cir. 2001).

   Dombrowski has not shown direct evidence of retaliation,/5 therefore she must proceed using the burden-shifting method. For the purposes of summary judgment, we will assume that Dombrowski has met the first two requirements of the prima facie case. The district court found, however, that Dombrowski's retaliation claim failed at the third prong because she could not show a causal connection between her complaint of sex discrimination and either of the adverse job actions because of the thirteen month period between the protected expression and the adverse action. Dombrowski complained of sex discrimination in June of 1996, yet she was not transferred or denied the promotion to assistant general manager until October of 1997. We agree with the district court. "In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct." Fyfe, 241 F.3d at 603. Dombrowski argues that thirteen months is not the relevant time period because the retaliation began before she was denied the promotion or transferred to the Waukegan facility. She argues that Lager began retaliating against her immediately after she complained about sex discrimination by changing her schedule, secretly videotaping her, giving her a warning for allowing unauthorized persons in the manager's office, and encouraging her to spend more time with Stumpf. None of these actions are sufficient to sustain a retaliation claim, however, because they are not materially adverse actions. See Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) (stating that an action must be more than "a mere inconvenience or an alteration of job responsibilities" in order to constitute an adverse employment action).

Even if Dombrowski had met all of the requirements of a prima facie case of retaliation, her claim would still fail, because, as we discussed in Part II. B, Arlington has provided legitimate business reasons for deciding not to promote Dombrowski to the assistant general manager position and for transferring her to Waukegan. She has not provided evidence showing that the proffered reasons are pretextual. Therefore, we find that the district court correctly granted summary judgment for Arlington on plaintiff's Title VII retaliation claim.

III.  Conclusion

We find that Dombrowski has failed to establish a prima facie case on either her disparate treatment claim or her retaliation claim. Therefore, we AFFIRM the decision of the district court.

FOOTNOTES

/1 "Mutuel" is a shortened form of the word "pari-mutuel" which refers to a system of wagering in which customers who bet on the winner share the total stakes less a small percentage taken by the management.

/2 Dombrowski does not appeal this order.

/3 Because the district court ruled that Dombrowski may not pursue relief for conduct occurring before February 6, 1997, Dombrowski is limited to challenging Arlington's October 1997 denial of promotion--the promotion to the assistant general manager position. Thus, Dombrowski may not challenge Arlington's June 1996 decision to hire Lager as the general manager of Trackside. Evidence relating to that action, such as Stumpf's comment that "Mr. Duchossois does not promote women," is therefore inadmissible.

/4 Dombrowski also appears to complain that Arlington retaliated against two of her family members who were employed at Arlington, but she has waived this argument by failing to fully address it. See Goren v. New Vision Int'l., Inc., 156 F.3d 721, 726-27 n.2 (7th Cir. 1998).

/5 Kica's statement that complaining about discrimination would be a "career decision" does not constitute direct evidence of discrimination because Kica was not a decision maker with respect to either the denial of the promotion or the transfer.