Cynthia BARKER, Plaintiff–Appellant,

v.

YMCA OF RACINE, et al.,
Defendants–Appellees.

No. 01–1109.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 8, 2001.

Decided Aug. 27, 2001.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

### ORDER

Cynthia Barker used to be a program director for the YMCA located in Racine, Wisconsin ("YMCA"). In July 1999 Ms. Barker, who is African–American, drew the ire of her supervisors after she failed to present a grant proposal to the Racine City Council. In March 2000 Ms. Barker filed a discrimination complaint with the State of Wisconsin contending that her supervisors discriminated against her be-

cause she is black. She left her position in May 2000 and never returned. Ms. Barker alleges that YMCA and two supervisors retaliated against her for filing the discrimination complaint, and that the defendants forced her to resign from her position. The district court granted summary judgment in favor of the defendants. We affirm.

### Background

#### A. Facts

Ms. Barker began working for YMCA in April 1995 as its Outreach Program Director. Ms. Barker's job duties included developing programs for low-income youth and securing funding for such programs. In July 1999 Ms. Barker worked on a proposal seeking a $21,000 grant from the city council for a community development program called "Youth Club 2000." Linda Marini, Ms. Barker's direct supervisor, advised Ms. Barker that the city council had scheduled a public hearing regarding the grant proposal. Marini told Ms. Barker, who was slated to run the program, that she wanted her to present the proposal to the city council because Ms. Barker is black and the program targeted black youth. Ms. Barker told Marini that she had planned to be on vacation on that date and could not attend the hearing. Ms. Barker claims that this vacation had already been approved and that she told Marini that she would not be attending the hearing. Ms. Barker did not attend the July 29 hearing. Marini subsequently presented the proposal to the city council, which denied funding.

On August 2, Ms. Barker met with YMCA Executive Director Mary Beth Ormiston, who stated that Ms. Barker should have made the presentation instead of Marini. Ormiston criticized Ms. Barker for missing the hearing because Ms. Bark-

er knew the importance of the proposal. Ormiston also stated that she was going to hold off on firing Ms. Barker. Two days later Marini iterated that Ms. Barker should have made the presentation because she is black and the program targeted inner-city black youth. Marini also told Ms. Barker that Ms. Barker would not be fired. Ms. Barker never again discussed the potential consequences of her absence at the hearing with Marini or Ormiston. Ms. Barker was not fired, suspended, or written-up for her failure to attend the hearing, nor did her job duties change.

On March 3, 2000, Ms. Barker submitted a discrimination complaint to the State of Wisconsin's Equal Rights Division charging that Marini asked her to speak at the hearing because she is black. Ormiston and Marini met with Ms. Barker to discuss the complaint. According to Ms. Barker, Ormiston said the following: she "didn't need this going on while the capital campaign was going on"; "Let me put it to you like this. You do enjoy working here don't you; you do enjoy your job?"; "I don't know why you feel this way and [Marini] didn't mean any harm in the comments she made"; and "I don't know what it feels like to be a black woman, just like you don't know what it feels like to be a single white woman in her mid–50s." (R. 14, Ex. A, at 131–34.)

Marini sent three e-mails to Ms. Barker, on March 30, April 3, and April 4, asking whether she intended to pursue the discrimination complaint. In a fourth e-mail, dated April 6, Marini requested a meeting with Ms. Barker to discuss the complaint. Ms. Barker walked to Marini's office and told her that she was not going to drop the charges; accordingly, the proposed meeting never took place. Ms. Barker also claims that Marini sent her a threatening e-mail that same day, but that it was deleted from the computer system. Mari-

ni denies sending this e-mail. Marini and Ormiston never again discussed the complaint with Ms. Barker.

On May 9, Ms. Barker received a performance appraisal (from Marini) in which she earned an overall mark of "2" out of "5." Ms. Barker had fared better in previous evaluations. Ms. Barker objected to the appraisal, which stated that she had until July 15, 2000, to improve in the areas in which she scored "2s." After the May 9 evaluation, Ms. Barker retained the same job duties and received her scheduled raise. According to Ms. Barker, Ormiston and Marini ignored her after giving the appraisal.

On May 15, Ms. Barker's attorney sent a letter to YMCA's Board of Directors and Ormiston notifying them of Ms. Barker's intention to sue because of racial discrimination. On May 16, Ms. Barker filed suit in federal court. That same day, staff directors did not invite her to attend a meeting.

On May 23, Ms. Barker took a medical leave of absence for psychological stress and anguish. She remained out of the office through the summer, and on August 9, YMCA sent a letter informing her that her medical leave time was close to expiring. The letter also advised Ms. Barker that if she failed to return to work or notify YMCA of her intentions, YMCA would interpret her actions as a voluntary resignation. Ms. Barker did not return to work or contact YMCA, and as a result, YMCA treated her departure as a voluntary resignation and ended her employment.

## B. Proceedings in the District Court

Ms. Barker's complaint alleged that YMCA, Marini, and Ormiston discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.,

and engaged in unlawful retaliation under Title VII and 42 U.S.C. § 1981. On July 16, the defendants deposed Ms. Barker. Five days later Ms. Barker moved for leave to amend her complaint to add claims for constructive discharge and intentional infliction of emotional distress.

On July 24, the defendants moved for summary judgment on Ms. Barker's original complaint, arguing that the undisputed material facts demonstrated that Ms. Barker did not suffer a material adverse employment action. The defendants' supporting brief also opposed Ms. Barker's proposed constructive discharge and emotional distress claims. On August 15, the district court granted Ms. Barker's motion to amend her complaint. In September Ms. Barker responded to the defendants' summary judgment motion.

On December 22, the district court granted summary judgment in favor of the defendants regarding her federal claims. The court concluded that Ms. Barker did not present any evidence of a material adverse employment action to demonstrate retaliation or constructive discharge.[1] The court also granted summary judgment in favor of the defendants on Ms. Barker's discrimination (disparate treatment) claim because she did not contest the defendants' motion with respect to that claim. The district court then declined to exercise supplemental jurisdiction over Ms. Barker's state law claims for emotional distress.

## Discussion

On appeal Ms. Barker argues that the district court erred in concluding that the defendants did not retaliate against her for filing the discrimination complaint. Ms. Barker also argues that a triable issue of fact exists regarding whether the defendants' actions made her work environment so intolerable that she was forced to leave.

### A. Retaliation

▮ Ms. Barker contends that the defendants retaliated against her for filing her discrimination complaint by pressuring her to drop the complaint and by giving her an unwarranted negative performance evaluation. Title VII prohibits employers from taking adverse employment action against employees simply because they have filed an unfair employment charge. *Velasco v. Ill. Dep't of Human Servs.,* 246 F.3d 1010, 1017 (7th Cir.2001). Section 1981 prohibits discrimination on the basis of race in the making or enforcement of contracts. 42 U.S.C. § 1981(a); *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir.1999), *cert. denied,* 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000). This court employs the same legal framework in analyzing Title VII and § 1981 claims. *Vakharia,* 190 F.3d at 806. In order to prove retaliation, Ms. Barker must either present direct evidence of retaliation or utilize a burden-shifting approach. *See Fyfe v. City of Fort Wayne,* 241 F.3d 597, 601 (7th Cir.2001). Because she does not present direct evidence of retaliation, Ms. Barker may make out a prima facie case by showing that: (1) she engaged in protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse job action. *See Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 653 (7th Cir.2001). If Ms. Barker establishes a prima facie case, the burden then shifts to the defendants to articulate

---

1. Even though the district court had granted Ms. Barker's motion to amend her complaint to add the constructive discharge claim after the defendants filed their summary judgment motion, the court nevertheless entered summary judgment on that claim because both parties addressed the issue in their summary judgment submissions.

a non-retaliatory reason for the challenged action. *See id.* If the defendants provide a legitimate explanation for the adverse employment action, the burden shifts back to Ms. Barker to show that the proffered reason is pretextual. *See id.*

■ The district court concluded that Ms. Barker failed to demonstrate that she suffered an adverse employment action, and therefore did not establish a prima facie case of retaliation. "Adverse actions" must be material; not everything that makes an employee unhappy is actionable. *Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 885 (7th Cir.1998). The adverse action must be more than a mere inconvenience or an alteration of job responsibilities, *Oest v. Ill. Dep't of Corr.,* 240 F.3d 605, 610 (7th Cir.2001); otherwise, minor or trivial employment actions that employees do not like could form the basis of a lawsuit, *Drake,* 134 F.3d at 885. Adverse employment actions include termination, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities. *Oest,* 240 F.3d at 613. We must consider the particular facts of each case to determine whether employees have suffered a materially adverse employment action. *Kersting v. Wal–Mart Stores, Inc.,* 250 F.3d 1109, 1115 (7th Cir.2001).

■ Ms. Barker argues that Marini and Ormiston's efforts to prevent her from pursuing her discrimination complaint constitute an adverse employment action. But there is no evidence in the record that the defendants tried to prevent her from pursuing her complaint. There is no evidence that Marini or Ormiston threatened her in any fashion regarding the complaint or pressured her to drop her charges. Though Ormiston and Marini's questioning may have made Ms. Barker uncomfortable, such questions do not rise to the level of a

legally cognizable "adverse employment action."

## B. Constructive Discharge

■ Ms. Barker also appeals the district court's entry of summary judgment on her constructive discharge claim. "An employee can assert a claim for constructive discharge when she is forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *Grube v. Lau Indus., Inc.,* 257 F.3d 723, 727–28 (7th Cir.2001). Absent extraordinary circumstances, complaining employees are expected to remain on the job while seeking redress. *Id.* Employees who quit without giving their employer a reasonable chance to resolve a problem have not been constructively discharged. *Id.* (citing *Ulichny v. Merton Comm. Sch. Dist.,* 249 F.3d 686, 704 n. 16 (7th Cir.2001)). Here, Ms. Barker did not try to resolve her work problems-she merely walked away from her job without notice and without approaching her supervisors with her complaints. Indeed, her failure to redress her problems through internal means is reason enough to uphold the grant of summary judgment in favor of the defendants on her constructive discharge claim.

■ Even if Ms. Barker had tried to resolve the problems with her supervisors, she did not demonstrate that her work environment was "intolerable." Working conditions for constructive discharge must be even more egregious than the high standard for establishing a hostile work environment. *Tutman v. WBBM–TV, Inc.,* 209 F.3d 1044, 1050 (7th Cir.2000), *cert. denied,* 531 U.S. 1078, 121 S.Ct. 777, 148 L.Ed.2d 675 (2001). Ms. Barker contends that her work environment became intolerable after her supervisors sent her e-mails that allegedly contained implied threats of termination, after her poor per-

formance appraisal, and after her supervisors began to shun her. But these actions do not support a claim for constructive discharge, which requires much more egregious behavior, such as actual or threatened physical violence. *See Simpson v. Borg–Warner Auto., Inc.*, 196 F.3d 873, 877 (7th Cir.1999) (collecting cases). Therefore, the district court correctly entered summary judgment with respect to Ms. Barker's constructive discharge claim.

### Conclusion

Ms. Barker has failed to demonstrate that triable issues of fact support her claims for retaliation and constructive discharge. Accordingly, the judgment of the district court is AFFIRMED.