Frank BURNS, Plaintiff–Appellant,

v.

INTERPARKING INCORPORATED, et al., Defendants–Appellees.

No. 01–1134.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 2001.

Decided Nov. 16, 2001.

Before Hon. COFFEY, Hon. KANNE, Hon. WILLIAMS, Circuit Judges.

## ORDER

Frank Burns appeals from the district court's grant of summary judgment to defendants InterParking Incorporated and General Parking Corporation on his claim of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964. Burns argues that the district court erred in finding that he failed to rebut the defendants' proffered reason for terminating his employment—namely, that he had engaged in dishonest and improper conduct by asking one of InterParking's contractors to submit false invoices to InterParking. We affirm.

InterParking (formerly known as General Parking) operates public parking facilities in Chicago. Burns, an African American, began his employment with General Parking in 1963. Burns was at all relevant times a Senior Vice President of Inter-Parking and reported to Jim Doria, the Senior Vice President of Operations for InterParking. Burns managed the operations of several InterParking parking facilities. His duties included hiring, firing, and disciplining employees; creating budgets; managing the cash flow of his assigned facilities; and creating profit and loss statements.

InterParking occasionally engaged subcontractors to perform various maintenance tasks at its parking facilities, including cleaning and snow removal. Burns was in charge of snow removal for Inter-Parking, including procuring drivers, maintaining snow-removal equipment, and contacting subcontractors when necessary. InterParking maintained a list of approved subcontractors (maintenance and cleaning contractors) that could be hired by Inter-Parking employees. Burns received a copy of the list. Burns testified at deposi-

tion that he did not know if any snow-removal contractors were on the list or if there was a separate list of approved snow-removal contractors. Although Burns was not aware of any internal rules at InterParking regarding who could be used as a subcontractor, he admitted in the district court that an unlisted subcontractor "probably would not" be paid. Burns knew that if he wanted to engage a subcontractor to remove snow, he needed to consult with either Doria or Larry Stanley, an InterParking Vice President.

On January 2, 1999, a large snowstorm struck Chicago. On January 4, Burns contacted Douglas Posley of Posley Lawn Care to help with InterParking's snow removal, even though he knew that Posley was not an approved InterParking subcontractor. Burns and Posley agreed on a flat fee of $6,500 for the work. Burns did not inform Doria, Stanley, or anyone else at InterParking that he had engaged Posley's services, although he did advise Doria and Stanley that he would need to hire an outside contractor because of the amount of snow.

Because Posley was not an approved InterParking subcontractor (and hence would not get paid), Burns asked Steve Jackson of Professional Janitorial Services, an approved subcontractor, to prepare invoices for the work performed by Posley. Burns supplied Jackson with the dates, places, times, and prices for the work performed by Posley. Jackson in turn prepared and sent invoices on behalf of Professional Janitorial Services to InterParking. Nobody at InterParking was aware of the invoicing arrangement between Jackson and Burns. InterParking paid Professional for all of the invoices, which totaled $6,550, and Burns himself may have approved at least one of the invoices for payment. After receiving payment from InterParking, Jackson, at Burns's instruction, prepared a check for $6,000 to Coast To Coast, a company owned by Burns. Burns endorsed the check and deposited it into Coast To Coast's bank account. Around the time that he received payment from Jackson, Burns paid Posley for its snow removal services by giving two checks to Jackie Todd, a Posley employee.

In February 1999 Jackson sent a letter to InterParking detailing an alleged payoff scheme orchestrated by Burns. According to the letter, Burns required payments from subcontractors if they wanted business from InterParking. In January 1999 Burns had contacted Jackson and directed him to participate in a kickback arrangement. Under that arrangement, Burns would provide phony billing information for snow removal services to Jackson, who would invoice InterParking and pay Burns a portion of the money collected. On January 11, Burns provided Jackson with the information for the fake invoices. Jackson then prepared the invoices and submitted them to InterParking. On January 22, Burns told Jackson that he had in his possession an InterParking check for $6,550 (the amount of the falsified invoices from Jackson), and arranged to bring the check to Jackson's office. After giving the check to Jackson, Burns instructed him to issue a check payable to "Coast To Coast" for $6,000 and allowed Jackson to keep the remaining $550.

InterParking received Jackson's letter on February 11, 1999, after which several InterParking employees met with Burns. They informed Burns that a vendor had alleged that he could not do business with InterParking unless Burns was paid. According to Burns, they never informed him who the vendor was, and suspended him without permitting him to respond to the charges. On February 12, InterParking terminated Burns's employment.

After receiving right-to-sue letters on several EEOC complaints he filed, Burns filed this suit on June 29, 1999, alleging that he had been discriminated against on the basis of his age, race, and disability (a broken wrist) in violation of Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981.

In an oral ruling on December 13, 2000, the court granted summary judgment to the defendants. The district court noted that evidence in the record relating to the prima facie case significantly overlapped with evidence regarding pretext, and so proceeded directly to the pretext analysis. The court found that Burns had failed to prove that InterParking's proffered reasons for firing him—namely, soliciting and approving false invoices and receiving payments from a contractor—were pretextual because the uncontradicted evidence showed that Burns knowingly solicited a false invoice from Jackson's company; caused InterParking to pay the invoice; failed to obtain approval for hiring Posley, an unapproved contractor; and personally received funds from an InterParking subcontractor. The court also found that Burns failed to provide evidence that he was he was singled out for investigation or discharged because of his race.

■ Burns appeals only from the district court's grant of summary judgment on his race discrimination claim, arguing that the district court erroneously concluded that he failed to present evidence that the defendants' proffered reasons for firing him were pretextual. Specifically, he argues that the defendants' actions after receiving the letter from Jackson on February 11, 1999 demonstrate that their reasons for firing him were a lie and that he was really fired because of his race. We review the district court's grant of sum-

mary judgment to the defendants *de novo,* viewing all of the facts an inferences therefrom in a light most favorable to Burns. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 884 (7th Cir.2001). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

Although Burns asserts in his brief that he presented direct evidence of discrimination, he fails to identify any direct evidence that the defendants fired him because of his race. Accordingly, we must analyze his claims under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To present a prima facie case of racial discrimination, Burns must show that 1) he is a member of a protected class, 2) he was meeting the defendants' reasonable expectations, 3) he suffered a materially adverse employment action, and 4) the defendants treated similarly situated persons not in the protected class more favorably. *Gordon* 246 F.3d at 885–86. There is no dispute that Burns met the first and third elements; however, Burns failed to meet the second and fourth elements, and the district court correctly granted summary judgment for the defendants.

■ First, Burns failed to provide evidence that any non-African American employees who were similarly situated to him were treated differently. Employees are similarly situated if there is a "substantial similarity" with respect to their performance, qualifications and conduct. *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000). This normally entails a showing that two employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct." *Id.* Individuals who do not hold the same or equivalent positions are not similarly situated. *Hoffman–*

548

*Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir.2001).

■ Burns asserts, based solely on his deposition testimony, that four white employees—Steve Gardner, Mike Harris, Greg Frankenhausen and Tom Cartan—were similarly situated to him but were not disciplined for improper behavior. But Burns's uncorroborated, conclusory statements that these employees were similarly situated to him are insufficient to support a Title VII claim. *Oest v. Illinois Dept. of Corrections,* 240 F.3d 605, 615 (7th Cir. 2001). Burns testified that Frankenhausen and Gardner submitted invoices to InterParking for work that was not performed by a subcontractor. He admitted, however, that he had "no specifics" regarding Frankenhausen and Gardner's conduct and learned of it only from another Inter-Parking employee. Because these alleged occurrences of differential treatment were not within Burns's personal knowledge, but rather were related to him by another InterParking employee, they cannot satisfy his evidentiary burden of proving that other individuals are similarly situated. *See Oest,* 240 F.3d at 614; *Borcky v. Maytag Corp.,* 248 F.3d 691, 695 (7th Cir.2001) (speculation insufficient to defeat summary judgment); *Minor v. Ivy Tech State College,* 174 F.3d 855, 856 (7th Cir.1999) (hearsay is unusable in summary judgment proceedings).

With respect to Cartan, Burns testified that he had not been disciplined despite having been accused of collecting money from a vendor after the contract with that vendor had terminated. But Burns admitted that he did not know whether Cartan had turned over to InterParking any of the money he collected, and did not provide any indication that he knew firsthand of Cartan's conduct. These speculative accusations also do not satisfy Burns's burden of production. *Oest,* 240 F.3d at 614. Fi-

nally, with respect to Harris, Burns asserted that InterParking placed several of the locations he managed under Harris's control. He does not, however, argue that Harris engaged in improper collection of money from InterParking contractors or vendors, and failed to demonstrate that Harris engaged in conduct similar to him. Burns also failed to specify what positions these individuals held at InterParking; since he failed to show that any of the white employees held the position of Senior Vice President or its equivalent, he failed to prove that they were similarly situated. *Hoffman–Dombrowski,* 254 F.3d at 651. Because Burns failed to set forth admissible evidence that similarly-situated white employees were treated differently from he, he failed to establish a prima facie case. Summary judgment was properly granted to the defendants.

■ Burns also failed to demonstrate that he was meeting the defendants' legitimate expectations. "Legitimate expectations" are bona fide expectations, as opposed to "phony" ones. *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997). Here, Burns has admitted facts showing that he was not meeting Inter-Parking's legitimate expectations—namely, that its employees act honestly and not accept payments from vendors. Burns admits that he hired Posley, an unapproved contractor, without consulting his supervisors. Because unapproved contractors would not be paid by InterParking, Burns recruited Jackson to bill Posley's work through false invoices from his company. Burns then paid Posley from his personal checking account and had Jackson give him a check from the proceeds received from InterParking. Burns also may have approved at least one of the false invoices submitted to InterParking by Jackson. This evidence shows that Burns acted dishonestly and accepted money from a con-

tractor—conduct that violated InterParking's legitimate expectations of him. Burns has therefore failed to satisfy all the elements of his prima facie case, and summary judgment was appropriately granted to the defendants.

Even if Burns had presented a prima facie case of race discrimination, he failed to meet his burden of proof on the issue of pretext. Burns argues that two lines of evidence show that InterParking's proffered reasons for firing him were pretext for discrimination. First, Burns contends that Jackson's letter to Graves showed that Burns, the only African–American Senior Vice President, was singled out for investigation. Burns also asserts that the defendants acted improperly in suspending and firing him without giving him an opportunity to present his version of the events in Jackson's letter. To show pretext, Burns must present evidence that InterParking's reasons for firing him had no basis in fact, were not the real reasons, or were insufficient to motivate the action. *Hoffman–Dombrowski,* 254 F.3d at 652. This court does not sit as a "super-personnel department" that weighs the prudence of an employer's decisions; our only concern is whether the employer's proffered reason for its actions was honest. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir. 2001).

Burns first argues that Jackson's letter indicates that he, the only African American Senior Vice President at Inter-Parking, was singled out for investigation by InterParking. While Burns does not fully develop the argument, his brief asserts that the letter "makes it abundantly clear that the defendant through it's [sic] employee ... had decided some time before January of 1999 that they were going to target plaintiff and use Steve Jackson to do it." (Appellant's Brief at 16.) He goes on to assert that because "the only person specifically asked by [InterParking] to be investigated was Frank Burns, the only African–American vice-president, ... [a] reasonable inference can be drawn that Burns was being targeted while non-minority vice-presidents were not." (*Id.* at 17.) Jackson's letter, however, does not say that Burns was the only Vice President whom Jackson was asked to contact. Rather, while it states that he was asked to contact Burns, it does not reflect whether Jackson was also asked to contact other Vice Presidents. The letter also provides no evidence that even if Burns was singled out for investigation, it was because of his race. Because no reasonable inference can be made from the letter that Burns was targeted for investigation because of his race, the letter does not demonstrate that InterParking's reasons for firing Burns were a lie.

Burns also argues that the defendants' actions upon receiving Jackson's letter— namely, suspending and firing him without giving him a chance to defend himself— show that their proffered reasons for firing him were pretext. Although this argument is also not well developed, Burns appears to argue that the defendants acted improperly by failing to conduct an adequate investigation before disciplining him. Even if all the allegations in Jackson's letter are false, however, Burns has admitted facts that corroborate InterParking's proffered reasons for firing him. As discussed above in the context of whether Burns met InterParking's legitimate expectations, Burns admitted that he hired an unauthorized contractor, had Jackson prepare false invoices for the contractor's work, and accepted a check for $6,000 from Jackson. The fact that InterParking's investigation may have been "imprudent, ill-informed [or] inaccurate" is of no moment; Burns's misconduct is the reason Inter-

Parking gave for firing him, and Burns has presented no evidence that the reason was a lie. *See Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 677 (7th Cir. 1997). Burns failed to produce evidence that he was investigated differently because of his race, and has failed to show that InterParking's proffered reasons for his dismissal are pretext for discrimination. The district court, therefore, correctly granted summary judgment in favor of the defendants.

AFFIRMED