**Beverly SPENCER, Plaintiff–Appellant,**

v.

**Cherryl T. THOMAS, Chairman of the United States Railroad Retirement Board, Defendant–Appellee.**

No. 01–3112.

United States Court of Appeals, Seventh Circuit.

Submitted March 7, 2002.[*]

Decided March 7, 2002.

Rehearing and Rehearing En Banc Denied May 7, 2002.

---

[*] After an examination of the briefs and the

record, we have concluded that oral argu-

Before COFFEY, MANION, WILLIAMS, Circuit Judges.

### ORDER

Beverly Spencer, a former employee of the United States Railroad Retirement Board, brought this suit under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Cheryl Thomas, the Chairman of the Board. Spencer alleged that the Board discriminated against her on the basis of her race (African American) when it took various allegedly adverse employment actions against her, and retaliated against her for filing a charge of discrimination with the Board's equal employment office. The district court granted summary judgment to Thomas, and Spencer appeals. After a *de novo* review of the record, we affirm.

Spencer began her employment with the Board in 1989 as an auditor in the Office of the Inspector General and was stationed at the Board's only office in Chicago. On January 29, 1998, a contractor was removing tiles on the first floor of the building with a strong solvent called Sentinel 747, causing Spencer and numerous other Board employees to become ill. While it is not clear what symptoms the other employees suffered, Spencer experienced dry eyes, nausea, and nasal problems. Spencer returned to work the following day but reported that she could still smell the solvent (which was not used again). Over the next five months, she worked only six days because she repeatedly became ill whenever she returned to the Board's office. On one occasion, for example, on June 18, Spencer was rushed to the hospital after experiencing difficulty breathing and swelling. Spencer was also absent from work for the entire period between July

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See*

Fed. R.App. P. 34(a)(2).

21, 1998 and February 1, 1999, and again from mid-April to December, at which time she was terminated. Spencer was absent a total of 434 work days between the onset of her illness and her termination in December 1999. Thomas asserts that 285 of those days constituted absences without leave, but Spencer disputes that fact, asserting that she had submitted "substantial" medical documentation of her inability to return to work.

During 1998 and 1999 Spencer was seen by numerous doctors and was diagnosed with asthma and Reactive Airway Distress Syndrome, which causes extreme sensitivity to various chemicals, solvents, and dust. In March 1998 Spencer informed two of her supervisors about her illness and notified them in April 1998 that she could not work in the building until the construction work was completed. Spencer provided notes from her doctors supporting her work restrictions. Spencer requested that the Board accommodate her by allowing her to work at home, but her request was denied in June 1998. Each time that she followed up on her request for accommodation, her supervisor told her that she needed to provide additional medical documentation. Spencer asserts that although she provided the requested documentation (a contention disputed by Thomas), she was not provided with accommodation for her illness. The Board ordered Spencer to return to work in June and July 1998; she did so, but again experienced swelling and difficulty breathing. Spencer did not return to work after the July episode (the parties dispute whether she followed proper leave procedures), and the Board suspended her in both August and September under its progressive disciplinary policy.

In June 1998 Spencer filed a charge of discrimination with the Board's EEO office, asserting that the Board had discriminated against her on the basis of her race and disability (her respiratory illness) by failing to provide her a reasonable accommodation. After the EEO investigated her complaints, the case was referred to the EEOC, which found that Spencer failed to prove discrimination. After filing the charge, Spencer asserts that her supervisor treated her differently, including communicating with her only in writing, criticizing her work excessively, closely monitoring her work, directing her to document her time, and giving her negative employment evaluations. Spencer filed a second charge of discrimination in May 1999, charging that her supervisor had retaliated against her for filing her first charge and discriminated against her on the basis of her race and sex. The disposition of this charge is not clear from the record.

In February 2000 Spencer filed this suit pro se against Thomas, alleging that the Board discriminated and retaliated against her. Spencer, through an attorney, amended her complaint to allege that the Board discriminated and retaliated against her by ordering her to return to work even though she became ill every time she returned to the Board's offices; forcing her to sit at her desk and not move unless she received a supervisor's permission to do so; denying her request for accommodation and failing to discuss accommodation options; sending agents to the hospital and to her house to monitor her and interrogate others about her; giving her unsatisfactory performance evaluations in 1998 and 1999; directing her to document her start time, end time, and lunch break; failing to assist her with computer problems; refusing to communicate with her except in writing; and suspending her in August and September 1998. Spencer does not challenge her eventual termination in this suit.

The district court granted summary judgment to Thomas, concluding that

many of the actions allegedly taken against Spencer did not constitute adverse employment actions and that Spencer had failed to show that Thomas' purported reasons for taking the remaining actions were pretext for discrimination. Spencer appeals.

Construing Spencer's pro se arguments liberally, she first appears to challenge the district court's conclusion that she failed to provide evidence that Thomas' proffered reason for the allegedly adverse employment actions taken against her—her failure to provide adequate medical documentation to excuse her absences from work—was pretext. Spencer sought to establish the case under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). While the district court found that many of the actions the Board took against Spencer did not constitute adverse employment actions—a decision Spencer does not challenge on appeal—it bypassed a discussion of whether Spencer had set forth a prima facie case of discrimination with respect to her remaining claims (that because of her race she was ordered to return to work, suspended for failing to do so, and denied reasonable accommodation) and proceeded directly to the issue of pretext. Although we have doubts about whether Spencer did set forth a prima facie case of discrimination (it does not appear that she showed that any other similarly situated employees were treated differently than her), Thomas does not press the issue on appeal and we find the issue of pretext dispositive here.

■ In the employment discrimination context, pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Grube v. Lau Industries, Inc.,* 257 F.3d 723, 730 (7th Cir.2001). We do not sit as a "super-personnel department," weighing the wisdom of a company's employment decisions; rather, we are concerned only with whether the employer's prof-

fered explanation was honest. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir.2001). Here, Spencer did not present any evidence to show that Thomas' proffered reason for the actions taken against her was untruthful. While Spencer allegedly supplied medical evidence to the Board to explain her absences, that evidence showed only that she needed to avoid exposure to irritants such as volatile hydrocarbons. One medical report from Columbia Olympia Fields Osteopathic Hospital and Medical Center, for instance, specifically identified Sentinel 747 as the cause of her respiratory problems. Because Sentinel 747 was not used in the building after January 29, 1998, the Board concluded that the medical documentation was inadequate to support Spencer's extensive absences from work. Spencer has failed to provide any evidence from which it could be inferred that the Board concocted its explanation to hide a discriminatory reason for taking action against her. *Grube,* 257 F.3d at 730. Spencer therefore failed to show that the Board's reasoning was pretext for discrimination.

■ Spencer also appears to argue that the district court erred by finding that she failed to show that Thomas retaliated against her for filing an EEO complaint in June 1998 regarding Thomas' failure to accommodate her illness. Spencer can set forth a prima facie case of retaliation by showing that "after filing the charge only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Stone v. Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir.2002). But Spencer did not provide any evidence that any similarly-situated employee who did not file an EEO complaint was treated differently than her.

Employees are similarly situated when there is substantial similarity with respect to their performance, qualifications, and conduct. *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617 (7th Cir.2000). This entails showing that the two employees had the same supervisor, were subject to the same standards, and engaged in similar alleged misconduct. *Id.* at 617–18. In her Northern District of Illinois Local Rule 56.1 Statement of Material Facts, Spencer identified only one person, Edward Halbe, who she asserts was similarly situated to her. Halbe, a white employee who did not file an EEO complaint, was not punished despite failing to show up for work on three occasions and being chronically late for work. But the misconduct Halbe engaged in—missing work on three occasions and coming in to work late—is not similar to Spencer's alleged misconduct—being absent without leave from work for almost 300 days in less than 2 years. *See Radue,* 219 F.3d at 617–18; *Ibarra v. Martin,* 143 F.3d 286, 292 (7th Cir.1998) (individuals whose misconduct was dissimilar from plaintiff's were not similarly situated). Spencer also fails to show that she and Halbe held the same or equivalent positions, *see Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir.2001), or that she and Halbe had the same supervisor. *Radue,* 219 F.3d at 617–18. Halbe was therefore not similarly situated to Spencer, and she failed to set forth a prima facie case of retaliation.

Spencer's remaining arguments require little discussion. She first asserts that the district court erred by considering matters outside of her complaint in deciding Thomas' motion for summary judgment. But a court is not limited to the pleadings in deciding a motion for summary judgment and may consider outside materials. *See* Fed.R.Civ.P. 56(c); *Berthold Types Ltd. v. Adobe Sys., Inc.,* 242 F.3d 772, 775 (7th Cir.2001). Spencer also

appears to argue that the district court failed to consider her claim under the Rehabilitation Act. While Spencer's original pro se complaint arguably alleged a claim under the Rehabilitation Act, she filed an amended complaint that dropped the claim, and the district court therefore properly declined to consider it. *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999) (an amended complaint supersedes and "wipes away" all prior complaints).

AFFIRMED