UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2005
Decided January 17, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-4238

| | |
|---|---|
| ETHEL J. SURRATT, | Appeal from the United States |
|     *Plaintiff-Appellant*, | District Court for the Northern District |
| | of Illinois, Eastern Division. |
|   *v.* | |
| | No. 03 C 2228 |
| CHICAGO TRANSIT AUTHORITY, | |
|     *Defendant-Appellee*. | Paul E. Plunkett, *Judge* |

**O R D E R**

Ethel Surratt sued her former employer, Chicago Transit Authority (CTA), for gender discrimination, 42 U.S.C. § 2000e-2, claiming that, because she is a woman, she was placed on long-term disability and not allowed to return immediately to her job once she was healthy. The district court determined that Surratt did not present sufficient evidence to show that CTA's proffered nondiscriminatory reasons for placing her on disability were pretextual. The court, upon that finding, granted CTA's motion for summary judgment.

Surratt began working for the CTA as a rail janitor in 1990, and within 6 years she was promoted to a coordinator position supervising other rail janitors. The coordinator position was salaried and nonunion. In 2000, Surratt missed more than 100 days of work while recovering from surgery for cervical cancer and, as a result, did not qualify in 2001 for leave under the Family Medical Leave Act (FMLA). In February 2001, after returning to work, Surratt learned

that Mark Bonk would be her new supervisor.  Based on her previous encounters with Bonk, Surratt became anxious over his transfer and saw a doctor about her stress.  Her doctor wrote a letter to Bonk discussing her stress level and her diabetes, and Bonk forwarded the letter to CTA's medical department.

At this time, the CTA claimed that it had budget problems and sought ways to reduce costs.  One program it devised was "Area 605" (CTA's now defunct long-term disability program), the goal of which was to reduce overtime costs by replacing sick or injured supervisors with other salaried workers.  The CTA identified supervisors who missed work for illness or injury for at least 30 days, to be placed in "Area 605," providing them full benefits and full pay for 6 months, followed by half-pay until they returned to work.  Yet, unlike leave taken under FMLA, "Area 605" does not guarantee an employee's job upon his or her return.

Surratt reported to Bonk for the first time in late February 2001, but he was still concerned about her health.  He sent her to Dr. Riera, a CTA doctor, for an evaluation.  Dr. Riera found Surratt unfit to work because of dizziness, though Surratt disputes making such a complaint.  After missing the next 2 weeks of work, Surratt returned only to have Bonk send her back to CTA's medical department.  Another doctor, Angulo, evaluated Surratt and found her medically unfit to work, this time because of an unresolved lung infection and concerns over her diabetes, hypertension, bronchitis, a growth on her lymph nodes, and the possibility that she might have breast cancer.

In late March, Bonk recommended that Surratt be placed in "Area 605," and in April 2001 the CTA's Disability Review Committee met and adopted Bonk's recommendation. Surratt continued to receive full pay until the end of August 2001, and beginning in September 2001 her pay was reduced by half.  While in "Area 605," Surratt visited her own pulmonary specialist, who released her to work without restrictions in August 2001; CTA doctors, however, did not clear her to work until November 2001.  During the approximately 9 months Surratt was in "Area 605" (from March 2001 until November 2001), three men were placed in rail janitor coordinator positions.  And although Surratt had been cleared to work, she was not placed for work until June 2002.

Surratt filed an EEOC complaint and brought a timely suit in the district court, claiming that the CTA violated 42 U.S.C. § 2000e-2 when it involuntarily placed her on long-term disability and delayed her return to work because of her gender.  The district court granted summary judgment for the CTA.  The court determined that Surratt made out a weak prima facie case of discrimination but had insufficient evidence of pretext.  The court also found that the CTA presented adequate nondiscriminatory reasons for placing Surratt in "Area 605" but that Surratt's evidence of pretext consisted only of a "handful of loosely supported, mostly conclusory allegations that Bonk treated her and other women unfairly."

On appeal, Surratt argues that she satisfied her burden to show that the CTA offered only pretextual reasons for assigning her to "Area 605" and not allowing her to return to work immediately when she was medically able. We review the district court's grant of summary judgment *de novo*. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 644-45 (7th Cir. 2005). Because the district court determined that Surratt established a prima facie case of discrimination, the burden shifted to the CTA to present a legitimate nondiscriminatory explanation for its adverse employment action. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978-79 (7th Cir. 2004). For Surratt to prove that the CTA's reasons were pretextual, she must show either that its reasoning (1) had no basis in fact, (2) was not the real reason for the adverse employment action, or (3) was insufficient to motivate the action; otherwise, summary judgment against Surratt was appropriate. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse*, 254 F.3d 644, 652 (7th Cir. 2001).

Surratt's first argument is difficult to parse, but she asserts without any elaboration or citation to the record that the CTA did not provide "admissible evidence" to support its legitimate nondiscriminatory business reason for placing her in "Area 605." The district court determined that the CTA had provided legitimate nondiscriminatory business reasons when it stated that it was facing budgetary constraints and that, in its attempts to eliminate unnecessary overtime expenditures, it placed Surratt into "Area 605" based on her medical condition and her history of extensive sick leave. But Surratt fails to articulate a legal argument why the reasons identified by the district court were not based on admissible evidence. Moreover, the district court did not rely on impermissible evidence when ruling on the motion for summary judgment. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 604-05 (7th Cir. 2000) (discussing district court's consideration of affidavits and deposition testimony on motions for summary judgment).

Next, Surratt seems to argue that the CTA could not have honestly believed that her medical condition required her to be placed in "Area 605" because the CTA's doctors disagreed as to which of her medical conditions made her unfit to work. She takes issue with the various afflictions the CTA doctors found her to suffer from, and she contends that these diagnoses do not show that she was unable to return to work. As a result, she suggests that the CTA's reasons for placing her in "Area 605" were factually baseless.

The CTA's decision is not factually baseless. Here, the CTA could rely on Dr. Angulo's determination that Surratt had an unresolved lung infection, diabetes, hypertension, bronchitis, a growth in her lymph nodes, and possibly breast cancer. Surratt's own pulmonary specialist did not find Surratt eligible to return to work until August 2001, and the CTA doctors continued to find her medically ineligible for work until November 2001. Her objections to the doctors' findings do not by themselves show that the CTA doctors falsely diagnosed her or that the CTA did not actually rely on those diagnoses. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997) (no pretext when company honestly believes reasons given for adverse employment

action).  Surratt has failed to prove that the CTA's explanation for placing her in "Area 605" was pretextual.  There simply is no evidence here to suggest that the CTA made its move (even if it was ill-advised) because Surratt is a woman.

For these reasons, the judgment of the district court is AFFIRMED.